Marshall HARRELL, on behalf of himself and all others similarly situated, MARY LEE HARRELL, and Patsy Bryant, Plaintiffs–Appellants,

Norman P. Rounds, et al., Intervenors–Plaintiffs–Appellants.

v.

DCS EQUIPMENT LEASING CORPORATION, et al., Defendants–Appellees.

Mary Lee HARRELL, et al., Plaintiffs–Appellants,

v.

Barry H. TRUPIN, et al., Defendants–Appellees.

Marshall HARRELL, on behalf of himself and all others similarly situated, Plaintiff–Appellant,

v.

ROTHSCHILD–RESERVE INTER-NATIONAL, INC., et al., Defendants–Appellees.

Nos. 90–8429, 90–8445.

United States Court of Appeals, Fifth Circuit.

Jan. 30, 1992.

Roy O. Minton, Martha S. Dickie, Minton, Burton, Foster & Collins, Austin, Tex., for Barry Trupin, Rene Trupin, Tara Trupin and Ben Trupin.

Edward F. Sherman, Austin, Tex., for Mary Lee and Marshall Harrell, et al.

Kemp W. Gorthey, Winstead, Sechrest & Minick, Austin, Tex., for Norman P. Rounds, et al.

Roy O. Minton, Martha S. Dickie, Minton, Burton, Foster & Collins, Alan D. Albright, Akin, Gump, Strauss, Hauer & Feld, Austin, Tex., for defendants-appellees in No. 90–8429.

Before WISDOM, HIGGINBOTHAM, and SMITH, Circuit Judges.

WISDOM, Circuit Judge:

In this appeal the plaintiffs/appellants contend that the trial court erred by setting aside various default judgments, revising an entry of partial summary judgment, directing a verdict in favor of certain defendants, incorrectly instructing the jury, and excluding certain evidence. We reject all of these contentions and affirm the judgment of the district court.

## I. BACKGROUND

This case involves appeals from several individual suits that were consolidated at the trial level.

### A. Cause No. A–88–CA–298.

In April 1988 Marshall Harrell filed suit in the United States District Court for the Western District of Texas ("No. 298") against the defendants Barry Trupin, his wife Renee, his daughter Tara, his father Ben Trupin (collectively, "the Trupin family defendants"), and six corporations allegedly controlled by Barry Trupin.[1] The complaint in this suit alleged violations of RICO, violations of Texas and federal securities law, common law fraud, and breach of fiduciary duty.

These claims are based on Mr. Harrell's investments in 1981–82 in Barry Trupin's computer equipment leasing programs. The investments were "one-on-one" transactions in which the investor individually purchased and took title to computer equipment. These transactions offered an investor a substantial tax deduction through depreciation with potential future profits from remarketing the equipment. The investor would purchase the equipment from one of the defendant companies, giving a note for substantially all of the purchase price, and then lease the equipment to an-other defendant company under a lease agreement calling for payments equal to payments under the purchase note. The purchase price of the equipment would serve as the basis for tax deductions by the individual investor. Thus, with a minimum cash payment (which was used almost entirely to pay "fees" of the various companies associated with the promotion), the investors received substantial initial deductions used to offset other income.

There were two fundamental IRS requirements which had to be met for tax deductions taken by the investors to withstand IRS scrutiny: first, the partnership must be a legitimate business with the potential for profit; and second, the investors must be "at risk" for the entire amount of their investment used as a basis for depreciation deductions. Before this suit was filed the IRS had begun to scrutinize the deductions taken by Mr. Harrell with regard to the one-on-ones. The IRS later disallowed the deductions and in 1988 sued for back taxes, interest, and penalties.

The corporate defendants made an appearance (a request for additional time in which to file their answer), but never filed an answer to the complaint. In June 1988 the clerk entered the default of five of the six corporate defendants; no default was entered at that time against DCS Equipment Leasing Corporation ("DCS"). In October 1988 default judgments were entered against those five corporate defendants jointly and severally. The judgment was in the amount of $6,637,576.02 (representing the treble damages claimed under the RICO count), plus attorney fees.

A seventh corporate defendant, Tarat Properties Corporation ("Tarat"), was later added to the complaint. In December 1988 the default of Tarat was entered by the clerk. In February 1989 default judgment was entered against Tarat.

In April 1989 Judge James R. Nowlin severed Harrell's remaining claims and transferred the severed case to Judge Luci-

---

1. These corporations are: Rothschild–Reserve International, Inc., DCS Equipment Leasing Corporation, Paragon Leasing Corporation, Par-agon Financial, Ltd., Paragon Equities Corporation, and Syn–Tech Leasing Corporation.

us D. Bunton under the cause number A–89–CA–359 ("No. 359"). At that time only DCS and the Trupin family remained as defendants.

### B. Cause No. A–89–CA–502.

In May 1989 Mary Lee Harrell (Marshall Harrell's mother), Patsy Bryant (as Trustee for the Marshall Harrell III 1980 Mineral Trust), and Marshall Harrell (individually and as custodian for Marshall Harrell III) filed suit in the United States District Court for the Western District of Texas against the Trupin family defendants, the six corporate defendants who were originally sued in No. 298, Peter Dalrymple, General Information Associates ("GIA"), and Rothschild Registry International, Inc.

The plaintiffs' causes of action in this suit ("No. 502") were substantially similar to those in No. 298. In the transaction, however, the investors purchased an interest in a limited partnership, GIA, which took title to the computer equipment. The purchase price of the equipment served as the basis for tax deductions by the partnership which were then passed on to each limited partner.

By late 1986 or early 1987 Mr. Trupin was financially unable to continue with the management of all the matters involving the partnerships and therefore made financial and business arrangements to have the duties performed by Madison Equipment Company. He transferred the books and records to Madison at that time.

In September 1989 Judge Bunton consolidated No. 359 with No. 502. The corporate defendants in No. 502 never made an appearance. In February 1990 the clerk entered the defaults of GIA, Rothschild Registry International, Inc., and five of the other corporate defendants. Default judgments were never entered with respect to these defendants. In March 1990 the clerk entered the default of DCS. In April 1990 Judge Bunton entered a default judgment against DCS.

On April 16, 1990, Judge Bunton entered a partial summary judgment in favor of the plaintiffs, finding that Barry Trupin was the general partner of GIA and owed a continuing fiduciary duty to the limited partners. On that same day, Judge Bunton reassigned the consolidated case to Judge Nowlin.

### C. The Intervenors.

In June 1989 the intervenors[2] filed a complaint in the United States District Court for the District of Colorado against Barry Trupin and several of his corporations, as well as his attorneys and accountants. In November 1989 the intervenors filed a motion in the Western District of Texas for leave to intervene in the consolidated case. Judge Bunton granted the intervenors' motion. The intervenors then filed a complaint in intervention that alleged claims similar to those alleged by the original consolidated plaintiffs.[3] The transaction underlying the intervenors' causes of action was their investment in General Information Associates 3 ("GIA3"), a limited partnership established for the same purposes as GIA. The corporate defendants also failed to respond to the intervenors' complaint.

### D. Trial.

In April 1990 Judge Nowlin presided over the jury trial of the consolidated case, which now included the intervenors' claims. At the time of trial only the Trupin family defendants remained; all other defendants had defaulted. At the end of the plaintiffs and the intervenors' case, Judge Nowlin entered a directed verdict in favor of Renee Trupin, Tara Trupin, and Ben Trupin. The

---

**2.** The intervenors, Colorado investors who had invested in a different limited partnership from the partnership in which the Harrells had invested are: Norman P. Rounds, Fred J. Kirk, E. Dennis and Katherine Christie, Timothy and Mary McMullen, Richard and Susan Crager, Juan and Marcia Garcia, Gary and Judy Pettit, M. Warner and Patricia Westland, Jack and Daya Zwart, and Niel and Jo Ann Grossman.

**3.** The complaint in intervention named as defendants the Trupin family, Rothschild Reserve International, Inc., Paragon Equities Corporation, Rothschild Registry Corporation, Syn–Tech Leasing Corporation, RRI XX Management Corporation, Tarat, DCS, and General Information Associates 3.

only remaining defendant was Barry Trupin. The case was submitted to the jury by special verdict with 43 special interrogatories and no general verdict form.

The jury returned its verdict on May 9, 1990. The jury's verdict was resoundingly in favor of Barry Trupin. The jury found that Barry Trupin:

(1) had not violated the federal RICO statute;[4]

(2) had not violated the Securities and Exchange Act;[5]

(3) had not violated the Texas Securities Act;[6]

(4) had not violated the Texas Business and Commerce Code;[7]

(5) had not committed common law fraud;[8]

(6) had not breached a fiduciary obligation, if any;[9]

(7) had not created certain trusts for illegal purposes;[10] and

(8) had not used the various corporations as a means or a sham to perpetuate fraud or promote injustice.[11]

The only finding that might possibly be a finding against Barry Trupin was the jury's finding that he was the alter ego of the corporations involved in the computer-lease operation.[12]

### E. Post Trial Motions.

Based on the jury's finding that Barry Trupin was the alter ego of the corporations, the plaintiffs moved for judgment against Barry Trupin in the amount of the default judgments they held against the corporate defendants. The plaintiffs and the intervenors renewed their motions for default judgment against the other defaulting defendants and also moved for judgment against Barry Trupin based on those defaults.

Barry Trupin moved the court to set aside the default judgments entered against the corporate defendants in No. 298.

On June 13, 1990, Judge Nowlin denied the plaintiffs and the intervenors' motions for default judgments in the consolidated case and on June 15, 1990, set aside the default judgments that had been entered in No. 298 on October 23, 1988, and February 15, 1989. The default judgment against DCS entered on April 13, 1990, slipped through the cracks, for neither Trupin's motion nor the court's order mentions it. On August 24, 1990, Judge Nowlin entered a supplemental, *sua sponte* order dismissing any claims that might be remaining against the defendants in Nos. 298, 359, or 502 because of having set aside the previously entered default judgments.

### F. The Appeal.

The plaintiffs and the intervenors appeal the district court's decision to vacate the default judgments, his refusal to enter additional default judgments, and his refusal to enter judgment against Barry Trupin based upon those default judgments. They also contest several decisions made during the trial: the reversal of the partial summary judgment entered against Barry Trupin on the issue of fiduciary duty; submission of that issue to the jury; the directed verdict entered in favor of Renee, Tara, and Ben Trupin; and several evidentiary rulings.

## II. DISCUSSION

### A. Default Judgments.

All of the plaintiffs and the intervenors' challenges to the district court's decisions

---

4. Special Interrogatories Nos. 1, 4, and 7; Record, Nos. 359 and 502, Consolidated ("Record"), at 4807, 4810, and 4813.

5. Special Interrogatories Nos. 12 and 15; Record at 4818 and 4821.

6. Special Interrogatory No. 18; Record at 4824.

7. Special Interrogatory No. 21; Record at 4827.

8. Special Interrogatories Nos. 24 and 27; Record at 4830 and 4833.

9. Special Interrogatories Nos. 30 and 34; Record at 4836 and 4840.

10. Special Interrogatory No. 40; Record at 4846.

11. Special Interrogatory No. 41; Record at 4847.

12. Special Interrogatory No. 42; Record at 4848.

regarding the default judgments can be resolved by examining the court's decision to set aside the judgments previously entered. If that decision was correct then there was no reason to enter default judgments against the other defaulting corporations, and there was no judgment on which to hold Barry Trupin vicariously liable.[13]

On June 15, 1990, Judge Nowlin set aside the default judgments entered against the corporate defendants on October 23, 1988, and February 15, 1989, in No. 298. The court's order refers to the fact that the jury's verdict in the consolidated case was in favor of Barry Trupin, although the jury found him to be the alter ego of the corporations which had earlier defaulted. The court then stated that under Fed.R.Civ.P. 55(c), the jury's verdict was good cause for setting aside the default judgments.

The citation to Rule 55(c) refers to the setting aside of an entry of default. That subsection, however, also states that a judgment by default may be set aside in accordance with Rule 60(b). Fed.R.Civ.P. 60(b) lists several specific reasons for which a judgment may be set aside. As was admitted at oral argument, none of these specific reasons is applicable to this case. The only provision of Rule 60(b) that could be applicable to this case is 60(b)(6), which provides that "the court may relieve a party or a party's legal representative from a final judgment ... for ... any other reason justifying relief from the operation of the judgment".[14]

Rule 60(b)(6) "is a grand reservoir of equitable power to do justice in a particular case when relief is not warranted by the preceding clauses".[15] "The broad language of clause (6) gives the courts ample power to vacate judgments whenever such action is appropriate to accomplish justice."[16] When reviewing the decision to set aside a previously entered judgment, this Court recognizes that the decision is one that is addressed to the sound discretion of the trial court. Therefore, in the absence of an abuse of discretion, we will affirm the trial court's determination.[17] The discretion under 60(b)(6) is said to be especially broad because relief may be granted under it "when appropriate to accomplish justice".[18]

■ The trial court provides little explanation for its decision to set aside the default judgments. The only factors explicitly mentioned are the jury verdict in favor of Barry Trupin and the alter ego finding on which the trial court relies heavily. Under Texas law, the alter ego doctrine is an equitable method of piercing the corporate veil. The Texas Supreme Court has stated that where a corporation is "organized and operated as a mere tool or business conduit"[19] of another, it is in effect the alter

---

**13.** We recognize that the default judgment against DCS was not set aside by the trial court's order. We believe this to be an oversight, but nonetheless, the reasons that justify the set aside also justify the refusal to enter judgment against Barry Trupin on that default judgment.

**14.** The plaintiffs and the intervenors have argued that Barry Trupin lacked standing to ask the court to set aside those default judgments. We reject this contention. Fed.R.Civ.P. 60(b) expressly authorizes only "a party or a party's legal representative" to obtain relief by motion from a final judgment. The Eleventh Circuit has stated that "the term legal representative was intended to reach only those individuals who were in a position tantamount to a party or whose legal rights were otherwise so bound up with the parties that their rights were directly affected by the final judgment". *Kem Mfg. Corp. v. Wilder,* 817 F.2d 1517, 1520 (11th Cir. 1987).

As the plaintiffs and the intervenors seek to hold Barry Trupin liable on the default judg-

ments, they cannot be heard to say that his legal rights were not affected by those default judgments. Furthermore, at the time that the default judgments were entered, Barry Trupin was a party to the lawsuit (which was later severed).

**15.** Moore's Federal Practice ¶ 60.27[2], at 60–295.

**16.** *Menier v. United States,* 405 F.2d 245, 248 (5th Cir.1968). *See also, Klapprott v. United States,* 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 266 (1949).

**17.** *Hand v. United States,* 441 F.2d 529, 531 (5th Cir.1971) (per curiam).

**18.** *International Controls Corp. v. Vesco,* 556 F.2d 665, 670 (2d Cir.1977), *cert. denied,* 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 758 (1978).

**19.** *Castleberry v. Branscum,* 721 S.W.2d 270, 272 (Tex.1986).

ego of that other and the corporate fiction may be disregarded. In this case, the plaintiffs and the intervenors attempted to use the alter ego doctrine in the most traditional manner—collecting a judgment against a corporation from the alter ego.

The trial court was obviously disturbed by the prospect of having to "afford Plaintiffs and Intervenors the ability to accomplish through default what they could not achieve through a trial by jury".[20] The trial court was disturbed by the apparent injustice of awarding damages against an individual found innocent on all charges; especially when the damages flowed from untried claims against corporations which were merely an extension of that individual.

■ This court applies Rule 60(b) "most liberally to judgments in default ... [because] ... [t]runcated proceedings of this sort are not favored.... Thus, unless it appears that no injustice was done by the judgment, the equities in such cases will militate strongly in favor of relief." [21] The type of injustice referred to includes the case in which the defaulting party could show that it has a meritorious defense. The jury's verdict acquitting Barry Trupin of all of the claims of wrongdoing against him, and finding him to be the alter ego of the corporations—yet finding that he did not use those corporations to perpetrate fraud—provides sufficient reason for the trial court to determine, on the evidence, that a refusal to set aside the default judgments would promote an injustice.

During oral argument the plaintiffs and the intervenors stated that there were other employees who could have used the corporations to perpetuate fraud even though Trupin was acquitted. They argued that the corporations' deliberate default robbed the district court of the discretion to reopen the case to hear the evidence regarding other employees. It is true that purposeful default is highly disfavored—but injustice cannot be tolerated. The trial court acted within its discretion in deciding to set aside the default judgments entered against the corporate defendants on October 23, 1988, and February 15, 1989, in cause No. 298. The verdict resulting from the trial against Barry Trupin is strongly persuasive that holding him liable on the default judgments against the corporations would be an injustice. There was no abuse of discretion in setting aside the default judgments so that those claims could be tried.[22]

## B. Fiduciary Duty.

The plaintiffs and the intervenors raise two issues regarding fiduciary duty. First they argue that Judge Nowlin abused his discretion when he reversed the partial summary judgment entered by Judge Bunton on the issue of fiduciary duty. Second, they argue that the trial court erred by submitting to the jury the issue of the existence of a fiduciary duty.

### 1. Summary Judgment

■ When the limited partnerships were originally formed, Barry Trupin was the sole general partner. As such he owed a fiduciary duty to the limited partners as a matter of law.[23] As soon as the limited

**20.** Order, Civ. Nos. A–89–CA–359 and A–89–CA–502 (consolidated), at 2 (June 13, 1990) (Nowlin, J.).

**21.** *Seven Elves, Inc. v. Eskenazi,* 635 F.2d 396, 403 (5th Cir.1981).

**22.** These claims never proceeded to trial. Two months after setting aside the default judgments the trial court, *sua sponte,* dismissed any claims that might be remaining against any defendant as a result of the set aside. Nevertheless, we do not address the dismissal of the claims, because this issue was not raised in the appellants' brief. Indeed, the issue has never been raised at any point in the appellate proceedings. This Court has ruled that "[i]ssues not raised in a party's brief are waived". *White v. Walker,* 932 F.2d 1136, 1141–42 (5th Cir.1991); *see also, Nissho–Iwai Co. v. Occidental Crude Sales, Inc.,* 729 F.2d 1530, 1539 n. 14 (5th Cir.1984); *Martin v. Atlantic Coast Line Railroad Co.,* 289 F.2d 414, 417 (5th Cir.1961).

**23.** There seems to be some confusion as to which state's law applies to the issue of the existence of a fiduciary duty. The limited partnership agreements state that New York law is controlling; Judge Bunton's partial summary judgment does not mention any state law; and in their briefs on appeal the parties have cited Texas law. Nevertheless, for the purposes of this discussion, the choice of law question is immaterial.

partnerships were closed, Barry Trupin assigned his interests in the partnership to RRI XX Management Corporation ("RRI XX"). His right to do this was explicitly provided for in the partnership agreement and in the private placement memorandum ("PPM") prepared for each investment opportunity. Trupin was the sole shareholder and chief executive officer of RRI XX. In early 1987, Trupin sold all of his stock in RRI XX to Madison Equipment Management Corporation ("Madison"), a company not owned by Trupin or any of his companies.

Judge Bunton entered a partial summary judgment in No. 359 on April 13, 1990, three days before he transferred the case back to Judge Nowlin. The substance of this order was a finding that Barry Trupin remained the general partner of and retained his fiduciary duty to GIA even after his assignment of his interests to RRI XX. The order also stated that he was a fiduciary at all times after 1983. The defendants filed a pre-trial motion asking Judge Nowlin to reconsider Judge Bunton's order. At the time, Judge Nowlin denied the motion.

At the end of the third day of trial the defendants renewed their motion for reconsideration and Judge Nowlin said he would rule the following morning. On the morning of the fourth day of trial Judge Nowlin amended the order of partial summary judgment to allow the issues of Barry Trupin's status as general partner of GIA and GIA3 and his status as a fiduciary to go to the jury.

■ Fed.R.Civ.P. 54(b) states that "any order ... which adjudicates fewer than all the claims ... shall not terminate the action as to any of the claims ... and the order or other form of decision is subject to revision at any time before the entry of judgment." We review the trial court's decision to revise an order for abuse of discretion.[24]

■ As the defendants pointed out to Judge Nowlin, Judge Bunton's order contained many problems. First, the order was directed towards the GIA partnership only. Thus, the issue of Barry Trupin's fiduciary status with regard to the one-on-ones and GIA3 was a triable issue. Second, the order did not discuss the effect, if any, of Barry Trupin's sale of his RRI XX stock to Madison. Third, the order seemed to conflate the issue of whether Barry Trupin was the general partner with the issue of whether he owed the partnership a fiduciary duty.

It is also interesting to note that Mr. Dietz, counsel for the plaintiffs, agreed with Judge Nowlin when he characterized the partial summary judgment as a sanction for discovery abuse.[25] The discovery abuse related to one of the documents the defendants had submitted as an exhibit to the plaintiffs' motion for partial summary judgment. Specifically, this document was an amendment to the certificate of limited partnership of GIA. This amendment added the limited partners, noted that Barry Trupin had assigned his interests to RRI XX, and named RRI XX as the general partner. Judge Bunton refused to consider the document because the defendants had been ordered previously to produce a category of documents into which this document fell.

At the time that Judge Nowlin was reconsidering the partial summary judgment, the plaintiffs had introduced this document

**24.** *Zimzores v. Veterans Administration,* 778 F.2d 264, 267 (5th Cir.1985). This case does involve another variable, namely, the fact that the order was entered by one judge and then reviewed by another. We have held that in such a case, "the latter judge should respect and not overrule such decision and order". *Stevenson v. Four Winds Travel, Inc.,* 462 F.2d 899, 905 (5th Cir.1972). As with all rules of thumb however, this one "should give way ... to the interests of justice and economy when those interests conflict with rigid adherence to the rule". *Ab-*

*shire v. Seacoast Products, Inc.,* 668 F.2d 832, 837 (5th Cir.1982). As this Court noted in *Abshire,* "[t]he successor judge has the same discretion as the first judge to reconsider the order". *Id.* at 837–88. Thus the standard of review is still abuse of discretion.

**25.** Transcript of Proceedings, Cause Nos. A–89–CA–359 and A–89–CA–502, Volume III, at 113. [Hereinafter cited in the format "Tr., Vol. ——, at ——."]

into evidence.[26] Furthermore, the intervenors had introduced a substantially similar document with respect to GIA3.[27] Thus, despite the plaintiffs and the intervenors' arguments to the contrary, there was additional evidence for Judge Nowlin to consider—evidence that was introduced by the plaintiffs and the intervenors themselves.

This additional evidence created a question of fact as to whether Barry Trupin was still the general partner of GIA and GIA3. Because Judge Bunton's order conflated the issue of status as general partner with the issue of fiduciary duty, this additional evidence called all of Judge Bunton's order into question.

Also, regardless of the additional evidence, Judge Bunton's partial summary judgment was flawed. The order did not consider whether the sale to Madison had any effect on Trupin's fiduciary duty. Yet the order concluded that Trupin had a fiduciary duty to the limited partners at all times after 1983. This might have been a reversible error. Judge Nowlin mentioned that he thought that Judge Bunton's order could form the basis for an appeal as it stood.

Judge Nowlin was faced with the following situation. The parties resisting the revision of the order admitted that it was entered (at least in part) as a sanction for discovery abuse. Those parties also introduced evidence that conflicted with portions of the order. Furthermore, the order did not even discuss all of the events that it concluded had not affected Barry Trupin's fiduciary duty. It was well within the trial court's discretion to revise the partial summary judgment order to permit the issue of fiduciary status to be more fully presented at trial.[28]

Finally, any prejudice that the plaintiffs and the intervenors may have suffered in

the preparation of their case was cured by Judge Nowlin. Judge Nowlin granted them additional time to put on witnesses to testify on the fiduciary status issue. There was no abuse of discretion.

2. Jury instructions regarding fiduciary duty

The plaintiffs and the intervenors insist that the court erred by not submitting their proposed jury instruction. That proposed instruction stated, in pertinent part:

As a matter of law, a general partner owes limited partners a fiduciary duty. Barry Trupin was the general partner of GIA and GIA 3. As a result, Barry Trupin owed Plaintiffs and Intervenors a fiduciary duty with respect to all transactions relating to GIA and GIA 3. This fiduciary duty ... continues throughout the existence of these partnerships.[29]

The court refused to use this instruction and instead instructed the jury to decide whether Barry Trupin owed the plaintiffs and the intervenors a fiduciary duty. The Court instructed the jury to consider whether:

A. A special relationship of trust and confidence existed between the parties over and above those relationships which characterize normal contractual business relations such as the kind of ordinary trust one business man has when contracting with another, and

B. Plaintiffs relied on the existence of a special relationship of trust and confidence in the manner in which it [sic] dealt with Barry Trupin, and

C. Barry Trupin accepted these special relationships of trust in [sic] confidence, if any, that the plaintiffs placed on it [sic].[30]

The plaintiffs and the intervenors' primary objection is that the jury was allowed

26. *See,* Plaintiff's Exhibit 305, Volume I, document 5.

27. *See,* Intervenor's Exhibit 100, Volume I, document 5.

28. While another court might have solved the problems by amending the order, we cannot say that Judge Nowlin abused his discretion by choosing one of many permissible solutions.

29. Plaintiffs' and intervenors' Requested Jury Charge; Record, at 3896.

30. Tr., Vol. V, at 104.

to decide whether Barry Trupin owed a fiduciary duty. Their proposed instruction has its own problems. First, the proposed instruction only addresses the limited partnerships. Thus, a second instruction, similar to that which the court actually gave, would have been needed with respect to the one-on-ones. Second, there was a factual question regarding whether Trupin's fiduciary duty survived the sale to Madison. Third, the proposed instruction states that the fiduciary duty flowed from Trupin's status as general partner. The evidence showed that his continuing fiduciary duty flowed from statements in the documents that an assignment would not relieve him of his fiduciary duty. Also, the evidence is divided on whether Barry Trupin remained the general partner of GIA and GIA3 after the assignment to RRI XX. Thus, the proposed instruction was erroneous.

■ Even if it was improper to submit the question of fiduciary status to the jury, that error was harmless. Barry Trupin consistently testified that even after RRI XX became the general partner, he considered that he retained a fiduciary duty towards the limited partners.[31] In closing argument, counsel for the intervenors reminded the jury that Barry Trupin had testified that he had a fiduciary duty, at least up until January 15, 1987 (when the sale to Madison occurred).[32] Trupin's counsel even pointed out that the evidence showed that an assignment of Trupin's general partnership interest to RRI XX did not relieve Barry Trupin of his fiduciary duty towards the limited partners, and again told the jury that Barry Trupin did not deny that.[33]

Finally, the plaintiffs and the intervenors have not shown that they were prejudiced by the instruction. It is not clear from the jury's answers to the special interrogatories whether they found Barry Trupin to have a fiduciary duty towards the plaintiffs and the intervenors. The questions pertaining to fiduciary duty asked: "Do you find from a preponderance of the evidence that Barry Trupin breached a fiduciary obligation, if any, with regard to GIA, [GIA3,] or the one-on-one transactions?"[34] The jury's answer of "no" to these questions does not clearly indicate a finding of no fiduciary obligation. Given the jury's response to all of the other questions and Barry Trupin's admission that he retained a fiduciary duty, it is more likely that the jury decided that he had not breached his fiduciary obligation. We find no abuse of discretion in the trial court's refusal to use the proffered instruction.

■ The plaintiffs and the intervenors also argue that the instruction misstated the substantive law and failed to allocate properly the burden of proof. These objections, however, were not made below. Fed. R.Civ.P. 51 provides that "[n]o party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the ground of the objection".

The court gave the parties an opportunity to state their objections to the charge and the jury instructions. The plaintiffs and the intervenors' entire objection to the fiduciary duty instruction was: "we believe that the court should instruct the jury that Barry Trupin was a general partner and was a fiduciary as a matter of law according to the requested instruction which we had already tendered to the court".[35]

This objection, which is very general, can be construed only as stating that the jury should not have been allowed to decide the issue. There is no indication that the plaintiffs and the intervenors are objecting to the substance of the instruction. Thus, we may review this alleged error only if "the error is so fundamental as to result in a

---

**31.** *See, e.g.,* Tr., Vol. III, at 173; Tr., Vol. IV, at 114 and 180.

**32.** Tr., Vol. V, at 131–32.

**33.** Tr., Vol. V, at 163.

**34.** Record, at 4836 and 4840.

**35.** Tr., Vol. V, at 66.

miscarriage of justice".[36]

Having reviewed the record, we find that the jury was not misled with respect to whether Barry Trupin had a fiduciary duty towards the plaintiffs and the intervenors. No miscarriage of justice occurred because the charge is not "responsible for an incorrect verdict, leading to a result that is manifestly unjust".[37]

## C. Directed Verdict.

The plaintiffs and the intervenors challenge the decision of the trial court to enter a directed verdict in favor of Ben and Tara Trupin at the close of the plaintiffs and the intervenors' case in chief. They apparently do not challenge the directed verdict entered in favor of Renee Trupin at the same time.

■ This Court reviews the entry of a directed verdict according to the same standard applied by the trial court. The standard to be applied to determine whether to grant a directed verdict has been clearly stated by this Court:

If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury. The motions for directed verdict and judgment n.o.v. should not be decided by which side has the better of the case, nor should they be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question.[38]

The plaintiffs and the intervenors argue that there was sufficient evidence from which a jury could have found Ben and Tara Trupin liable as conspirators or as aiders and abettors under RICO, the federal or state securities laws, or common law fraud.

The plaintiffs and the intervenors support this contention by pointing to what they refer to as the "key roles" of Ben and Tara in the Trupin enterprise. Stating that Ben and Tara Trupin played "key roles" in the Trupin enterprise more than overstates what the evidence at trial showed. The evidence showed that Tara Trupin was Barry Trupin's daughter, that she received money from her father, that he paid for her wedding, and that, unknown to her, she was the beneficiary of several trusts that in effect owned the Trupin enterprise. Additionally, there was evidence that she was present when her father stated that everything he did he did for his daughter.

With respect to Ben Trupin, the evidence showed that he was named as trustee of some of the trusts, that he was named as the settlor of other trusts, that he allowed his son to use his name, and that he allowed his son to use his address. The evidence also showed that he was not involved in the operation of the business of any of the corporations, that he never even attended a board meeting. His only involvement was to let his son use his personal address in Florida for some of his son's business, and to sign and return documents when he had allowed businesses or companies to use his name. Indeed, the evidence showed that Ben Trupin knew very little, if anything, about his son's businesses and the trusts established for Tara.

In sum, there was no evidence that either Ben or Tara ever took an active role in the enterprise or had knowledge of any fraudulent activities. Nor was there any evidence from which a reasonable jury could infer

**36.** *Coastal Distributing Co. v. NGK Spark Plug Co.,* 779 F.2d 1033, 1039 (5th Cir.1986) (quoting *Farrar v. Cain,* 756 F.2d 1148, 1150 (5th Cir. 1985)).

**37.** *Farrar v. Cain,* 756 F.2d 1148, 1150 (5th Cir. 1985).

**38.** *Boeing Co. v. Shipman,* 411 F.2d 365, 374–75 (5th Cir.1969) (en banc).

such knowledge. The evidence produced was a far cry from evidence showing that these individuals played "key roles".

To prevail on any of their claims, the plaintiffs and the intervenors would have to show that Ben and Tara knew about the illegal activity. The plaintiffs and the intervenors rely heavily on cases holding that the necessary knowledge can be inferred from conduct. The plaintiffs and the intervenors fail, however, to provide any evidence of conduct from which a reasonable person could infer that Ben or Tara Trupin had any knowledge of wrongdoing.

The plaintiffs and the intervenors in effect want to hold Tara liable because she is Barry Trupin's daughter and he did things for her. The evidence with respect to Tara Trupin was nonexistent, and the claims against her were properly dealt with by the directed verdict. The plaintiffs and the intervenors want to hold Ben Trupin liable because he was Barry Trupin's father and occasionally Barry asked a favor of him. There was a scintilla of evidence with regard to Ben Trupin, but not enough to defeat the motion for directed verdict. Perhaps the plaintiffs and the intervenors could have revealed additional evidence had they chosen to call Ben as a witness. But such tactical decisions at trial are not grounds for reversing a directed verdict properly entered.

### D. The Evidentiary Rulings.

The plaintiffs and the intervenors argue that the trial court erred by excluding two pieces of evidence. The first is Barry Trupin's refusal to testify and his invocation of the Fifth Amendment at his first deposition. The second is evidence of a Colorado judgment against Barry Trupin for violations of federal securities laws. This Court reviews the trial court's decision to exclude evidence for abuse of discretion.[39]

#### 1. Invocation of the Fifth Amendment

In November of 1989, the plaintiffs attempted to take Barry Trupin's deposition. At the deposition, Trupin answered the first question (his name), but he invoked the Fifth Amendment and refused to answer any subsequent questions (including his address). Magistrate Capelle granted the plaintiffs' motion to compel and for sanctions, finding that Barry Trupin had improperly invoked the Fifth Amendment. Afterwards, Barry Trupin was deposed, and answered all questions posed to him.[40]

On the fourth day of trial, the plaintiffs brought to the court's attention their desire to question Barry Trupin about his earlier invocation of the Fifth Amendment. The plaintiffs correctly pointed out that there is no constitutional reason to exclude an earlier invocation of the Fifth Amendment in a civil case.[41] A trial court, however, has wide discretion under Fed. R.Evid. 403 to exclude evidence if its probative value is substantially outweighed by the danger of unfair prejudice.

The plaintiffs stated that the evidence was probative on the issue of Barry Trupin's credibility and the issues of fraudulent concealment (which tolled the statute of limitations) and breach of fiduciary duty. Their theory was that Trupin's invocation of the Fifth Amendment is evidence from which the jury could conclude that he "engaged in activities to conceal the true state of facts from investors".[42] The trial court found that the possible prejudice greatly outweighed any probative value. It should be noted, however, that the court stated that it was willing to reconsider that ruling if the plaintiffs could show that the evidence was more probative (for example, if

**39.** *F & S Offshore, Inc. v. K.O. Steel Castings, Inc.,* 662 F.2d 1104, 1107–08 (5th Cir.1981).

**40.** The plaintiffs complain that Barry Trupin was evasive at this second deposition. The plaintiffs, however, had ample opportunity to present the evidence of evasiveness at trial; the court's rulings did not prohibit them from going into this second deposition.

**41.** *Baxter v. Palmigiano,* 425 U.S. 308, 318, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810 (1976) ("the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them").

**42.** Tr., Vol. III, at 122.

Trupin refused to answer questions at trial or answered questions differently at trial). The plaintiffs never asked for reconsideration.[43]

This Court has previously noted that "[t]he invocation of the privilege, particularly on the advice of counsel, is an ambiguous response".[44] The potential probative value of Trupin's invocation of the Fifth Amendment is further reduced by the fact that he subsequently answered all of the questions.[45] The potential prejudice in revealing the invocation of the Fifth Amendment is high, because the jury may attach undue weight to it, or may misunderstand Barry Trupin's decision to invoke his constitutional privilege. The ruling of the trial court was well within his discretion.

### 2. The Colorado Judgment

 Before the selection of the jury, the trial court granted the defendants' motion in limine to preclude introduction of evidence regarding other lawsuits. The court informed the plaintiffs and the intervenors that if, during the trial, they thought some other lawsuit had become relevant, they should approach the bench for a discussion of it. On the fourth day of trial the plaintiffs and the intervenors requested that they be allowed to introduce a certified copy of a judgment entered in the United States District Court for the District of Colorado against Barry Trupin ("the Colorado judgment"). That judgment was that Barry Trupin had violated Section 10(b) and Rule 10b–5 of the federal securi-

ties laws in connection with another computer leasing partnership.

The plaintiffs and the intervenors wanted to introduce this judgment as proof of a predicate act under RICO. The trial court refused to admit the judgment stating that "extraneous lawsuits, especially those where there's no final judgment ... have more prejudicial effect than probative value as far as this case is concerned".[46]

This Court has stated that there are three factors relevant to the issue of whether evidence of other crimes, acts, or wrongs is admissible: (1) relevance to an issue other than character, (2) probative value outweighing the potential for prejudice, and (3) proof that the offense was in fact committed.[47] The trial court relied on the second of these factors to exclude the Colorado judgment.

This Court has previously noted the potential for prejudice when a previous jury verdict is offered: the acting jury may give undue value to the previous determination.[48] In this case the previous judgment was not final. Thus, it was entitled to even less probative value. The trial court did not abuse its discretion in determining that the possible prejudice of the Colorado judgment outweighed any probative value it might have.

 Additionally, if the exclusion of this evidence was in error, it was harmless error. The plaintiffs and the intervenors fully pursued all of their other theories of predicate acts. The jury found in favor of Barry Trupin on all of these theories.

---

43. In the briefs and at oral argument there was some discussion concerning whether the trial court had actually allowed the plaintiffs to present this evidence. The confusion revolves around an objection made by the defense to a line of questions concerning later real estate transactions. Counsel for the intervenors argued that the evidence concerning the real estate transactions was relevant for the same reasons that he had thought the Fifth Amendment evidence was relevant. The trial court overruled the defense objection and allowed the questioning to proceed. The record is confusing as to whether the trial court also ruled that the Fifth Amendment evidence was now admissible. We choose not to address this contention because of our holding that preclusion of the evidence was not an abuse of discretion.

44. *Farace v. Independent Fire Ins. Co.*, 699 F.2d 204, 210–11 (5th Cir.1983).

45. *Id.* at 211.

46. Tr., Vol. III, at 211.

47. *Dial v. Travelers Indemnity Co.*, 780 F.2d 520, 523 (5th Cir.1986).

48. *Brumley Estate v. Iowa Beef Processors, Inc.*, 704 F.2d 1351, 1356–7 (5th Cir.1983), *reh'g denied*, 715 F.2d 996 (5th Cir.1983), *cert. denied*, 465 U.S. 1028, 104 S.Ct. 1288, 79 L.Ed.2d 690 (1984).

Even if this judgment presumptively established a predicate act, it could not affect the verdict on the RICO claim—the purpose for which it was offered. Thus, the error, if any, was harmless.

## III. CONCLUSION

For the reasons we have stated, we AFFIRM the judgment of the district court.