# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 23, 2008

Charles R. Fulbruge III
Clerk

No. 07-50566

RALPH HINOJOSA,

Plaintiff-Appellant,

v.

OFFICER ISRAEL BUTLER, Individually and in his Official Capacity as a City
of San Antonio Police Officer; CITY OF SAN ANTONIO, TEXAS,

Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Texas,
San Antonio Division

Before KING, WIENER, and ELROD, Circuit Judges.

JENNIFER W. ELROD, Circuit Judge:

Appellant Ralph Hinojosa appeals the district court's grant of summary judgment in favor of the City of San Antonio on his § 1983 excessive force and deliberate indifference claims. He also appeals the district court's judgment in favor of San Antonio police officer Israel Butler on the same claims. We affirm the district court's grant of summary judgment in favor of the City, but reverse and remand for a new trial on the issue of Officer Butler's liability for excessive force.

## I. BACKGROUND

On September 4, 2003, at about 2 a.m., Officer Israel Butler of the San Antonio Police Department (SAPD) executed a traffic stop of Appellant Ralph Hinojosa. Hinojosa failed to stop immediately. Rather, having consumed at least four beers, and aware of an outstanding warrant for his arrest, Hinojosa

continued driving, albeit never exceeding the speed limit. After driving several blocks, Hinojosa pulled over. The parties' accounts of subsequent events diverge.

According to Hinojosa, as he sat waiting for Butler to approach his vehicle, he heard a sudden "whack" against the window frame of his driver's side door. Allegedly fearing for his safety, Hinojosa kicked his door open, sending it towards Butler, and attempted to flee. Butler pursued Hinojosa all the while striking him in the leg, back, head, and groin with his baton. Butler eventually subdued Hinojosa, who suffered numerous welts and bruises, as well as a broken finger.

The specific manner in which Hinojosa sustained the broken finger received much attention at trial. Hinojosa claims that he was simply shielding himself from Butler's baton blows when Butler struck his hand. Butler insists that he struck Hinojosa's hands because he observed in them an unidentifiable object, later determined to be a small flashlight attached to Hinojosa's key chain. Butler concedes that Hinojosa never attempted to strike him, but nevertheless insists that Hinojosa was constantly trying to "push him away."

Butler arrested Hinojosa and transported him to the San Antonio Detention Center, where he was eventually charged with evading arrest. Butler ended contact with Hinojosa when he left him with Detention Center intake personnel. At trial, Hinojosa admitted he never complained of his injuries to Butler, but insists this was because he did not want to anger Butler, not because his injuries were trivial. Hinojosa also admitted that he did not complain of his injuries to Detention Center personnel or the magistrate judge before whom he was brought shortly after his arrest. After four hours in the Detention Center, Hinojosa finally asked for medical attention.

Hinojosa was next transported to the Bexar County Jail, where he was "medically rejected" due to his injuries. County Jail personnel notified the SAPD that they would not accept custody of Hinojosa until he received medical treatment. Hinojosa next sat in the County Jail for about four hours waiting for

an SAPD officer to return and transport him to the hospital; during this time Hinojosa received no medical care. Upon returning to the County Jail to retrieve Hinojosa, SAPD officers transported him immediately to the hospital. There, he was treated for a broken finger as well as various cuts and bruises.

On March 23, 2005, Hinojosa filed suit in the United States District Court for the Western District of Texas against the City and against Butler in his official and individual capacities. Hinojosa invoked 42 U.S.C. § 1983 and claimed that Butler, under the color of state law, violated his Eighth Amendment rights by (1) subjecting him to excessive force and (2) demonstrating deliberate indifference toward his serious medical needs. He also claimed municipal liability on the part of the City, alleging that Butler's conduct was in furtherance of an SAPD custom or policy. The district court eventually granted the City's motion for summary judgment as to both of Hinojosa's claims, concluding that he failed to raise a genuine fact issue regarding whether his injuries resulted from a municipal policy. Thus, only Hinojosa's claims against Butler in his official and individual capacities proceeded to trial.

Butler resigned from the SAPD in 2006. During his five years on the force, Butler was the subject of numerous SAPD internal affairs investigations. These investigations concerned, for example, allegations that Butler sexually assaulted a woman, and that he issued a speeding citation to a motorist who did not exceed the posted speed limit. Other investigations concerned automobile collisions in which Butler was involved, as well as timekeeping issues. Four incidents in particular are central to this appeal, and are hereafter referred to collectively as Butler's "prior conduct." In the first incident, Butler submitted a report in which he claimed he was rear-ended by another vehicle while making a traffic stop. The City subsequently found no evidence to corroborate Butler's claim. In the second incident, Butler executed a traffic stop of a City employee for whom an arrest warrant was at the time outstanding. Butler offered to issue a speeding citation to the driver's wife, the passenger, in order to avoid having to arrest the

City employee pursuant to the warrant. The third incident involved Butler firing two rounds from his service weapon after, according to Butler, he observed an individual aiming a rifle at him. Butler later admitted to fabricating this story in order to justify firing his weapon. The fourth incident was Butler's resignation from the SAPD shortly after the first three incidents.

Butler moved pretrial to exclude evidence related to his prior conduct. The district court ruled that such evidence was inadmissible under Federal Rule of Evidence 404(b)[1] because it was "only relevant to show Butler's character as a[n] officer who lies and files false reports to absolve himself of blame," and because "the probative value of the evidence [was] substantially outweighed by the danger of unfair prejudice" to Butler. Notwithstanding the Rule 404(b) ruling, the district court ruled that Hinojosa could cross-examine Butler regarding his prior conduct pursuant to Rule 608(b); that rule provides in relevant part:

> Specific instances of the conduct of a witness, for the purpose of attacking . . . the witness' character for truthfulness . . . may . . . in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness . . . concerning the witness' character for truthfulness or untruthfulness . . . .

The district court ruled that Butler's prior conduct related to his "problem with 'making things up,'" and therefore was a proper subject of cross-examination under Rule 608(b). At the time the district court rendered its ruling, it was aware that Butler planned to invoke his Fifth Amendment right against self-incrimination in response to questions about his prior conduct. That same day, however, the court ruled that although Hinojosa could question Butler on his

---

[1] Rule 404(b) provides in relevant part:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

prior conduct, he was required to do so outside the presence of the jury due to Butler's planned invocation of his Fifth Amendment rights. Outside the presence of the jury, Hinojosa asked Butler specific questions concerning his prior conduct, such as whether he was honest in claiming that someone pointed a gun at him in justifying firing his weapon, whether he issued a citation to the wrong individual in order to avoid issuing a citation to a City employee, and whether the investigations into these incidents played any role in his decision to resign from the SAPD. In response to each of these questions, Butler invoked his Fifth Amendment right against self-incrimination.

The jury returned a verdict in favor of Butler on both of Hinojosa's claims. Hinojosa appealed, arguing that the district court reversibly erred (1) in refusing to allow him, under Rule 608(b), to cross-examine Butler before the jury regarding his prior conduct, and (2) in granting the City summary judgment on the issue of municipal liability.

## II. DISCUSSION

### A. Evidentiary Issues

Hinojosa first argues that the district court erred in preventing him from cross-examining Butler about his prior conduct in front of the jury. Specifically, Hinojosa argues that, under our precedent, a district court abuses its discretion when it excludes from evidence a witness's Fifth Amendment invocation on the sole basis that the jury might draw adverse inferences from his silence.[2]

---

[2] In his appellate brief, Hinojosa presents two issues to the court: whether the district court erred in its evidentiary rulings and whether it erred in granting the City summary judgment as to municipal liability. In the portion of his brief addressing the first issue, Hinojosa devotes his discussion almost solely to whether the district court misapplied Rule 608(b). Hinojosa makes conclusory and passing assertions that evidence of Butler's prior conduct was admissible under Rule 404(b) because it was relevant to "Butler's motive, opportunity, intent, and/or absence of mistake," but fails to meaningfully brief the issue. "A party waives an issue if he fails to adequately brief it." Audler v. CBC Innovis Inc., 519 F.3d 239, 255 (5th Cir. 2008) (citation and internal quotation marks omitted). We therefore address only whether the district court erred in applying Rule 608(b).

When a defendant at trial invokes the Fifth Amendment and chooses not to testify, there is a risk that the jury will assign culpability to him by assuming merely from his silence that he has something to hide. See Carter v. Kentucky, 450 U.S. 288, 301 (1981) ("[U]nless instructed otherwise, [a jury] may well draw adverse inferences from a defendant's silence."). In a criminal trial, "a defendant must pay no court-imposed price for the exercise of his constitutional privilege not to testify." Id. Thus, a jury in a criminal case may not draw adverse inferences against a defendant merely because of his choice to remain silent.

Nevertheless, "while a person may refuse to testify during civil proceedings on the ground that his testimony might incriminate him . . . his refusal to testify may be used against him in a civil proceeding." Farace v. Indep. Fire Ins. Co., 699 F.2d 204, 210 (5th Cir. 1983). Thus, although a jury in a criminal case is not permitted to draw adverse inferences based on a defendant's invocation of his Fifth Amendment rights, it is well-settled that "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." Baxter v. Palmigiano, 425 U.S. 308, 318 (1976).[3]

"In general, the decision as to whether to admit a person's invocation of the Fifth Amendment into evidence is committed to the discretion of the district court." FDIC v. Fid. & Deposit Co., 45 F.3d 969, 977 (5th Cir. 1995). "A trial court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." United States v. Yanez Sosa, 513 F.3d 194, 200 (5th Cir. 2008) (citation and internal quotation marks omitted). Here, the court did not give any valid reason for its decision to require

---

[3] In some circumstances, however, even if the witness's invocation is of high probative value, it may still be excluded if its probity is substantially outweighed by the risk of unfair prejudice to the witness. See Fed. R. Evid. 403 ("[E]vidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ."). Here, however, the court did not appear to base its ruling on Rule 403; that is, it did not balance probity with prejudice in excluding Butler's invocation from the presence of the jury.

Hinojosa's questioning, and Butler's invocation of the Fifth Amendment, to take place outside the jury's presence. Rather, the court appeared to conflate the standard governing a defendant's invocation in the criminal context with the standard applicable in the civil context, and assumed that Butler's planned invocation ipso facto foreclosed cross-examination before the jury on his prior conduct.[4] It therefore appears that the district court's ruling was based on an erroneous view of the law, and was therefore an abuse of discretion.

This does not necessarily mean, however, that reversal is warranted. Pursuant to Federal Rule of Civil Procedure 61, "no error in admitting or excluding evidence . . . is ground for granting a new trial" if the error does "not affect any party's substantial rights." Thus, "[w]e will reverse for an error in an evidentiary ruling only where the ruling has harmed the complaining party." Farace, 699 F.2d at 211. As the following discussion demonstrates, although our precedent on this issue is limited, it nevertheless compels us to remand this case for a new trial.

1. Our Precedent

Three of our prior decisions guide the analysis that follows: Farace v. Independent Fire Insurance Co., 699 F.2d 204 (5th Cir. 1983), Harrell v. DCS Equipment Leasing Corp., 951 F.2d 1453 (5th Cir. 1992), and Curtis v. M&S Petroleum, Inc., 174 F.3d 661 (5th Cir. 1999).

In Farace, the plaintiff's house burned down, and he initially invoked the Fifth Amendment when asked to cooperate with investigators. Farace, 699 F.2d at 206, 209. Farace submitted a claim to the defendant, Independent Fire Insurance Company, which refused to pay on the claim due to its belief that

---

[4] After concluding, in a written order, that Butler's resignation and "instances of conduct concerning Butler's character for untruthfulness" were a proper subject of cross-examination, the court ruled orally that "I've determined not to go into any of those [incidents] either by the documents or anything because he's going to invoke the Fifth." Hinojosa objected to the requirement to question Butler outside the presence of the jury, and noted that in civil cases the invocation of the privilege is treated differently. The court then explained that the questioning would have to be done outside the presence of the jury.

Farace intentionally set fire to his own home in order to reap the insurance proceeds and satisfy his extreme debt. Id. at 206. Farace filed suit against Independent Fire seeking payment of his claim under the policy. Id. At trial, Independent Fire sought to cross-examine Farace on his initial unwillingness to answer the questions of the fire investigators. Id. at 209. Independent Fire conceded that Farace's refusal to cooperate was short lived, as his full cooperation was eventually forthcoming. Id. at 211. The district court refused to admit Farace's invocation, concluding that such evidence was unduly prejudicial. Id. at 209 & n.5.

In reviewing the district court's ruling, this court began with a recitation of the rule that a jury may in a civil case draw adverse inferences based on a party's invocation of the Fifth Amendment. We nevertheless declined to answer the question of whether the district court abused its discretion because, even if it had, the erroneous ruling did not harm Independent Fire. Id. at 211. Our bases for this conclusion were several. First, we concluded that Farace's invocation was of little probative value as to his character for truthfulness because he, as Independent Fire conceded, quickly agreed to fully cooperate with fire investigators following his initial reluctance to do so. Id. We also concluded that the defendant "had ample opportunity to impeach its witness by other means," by, for example, introducing evidence that Farace had "prior experience with the criminal authorities," had previously pleaded nolo contendere to stealing several cases of beer, and that Farace was in severe financial trouble at the time of the fire. Id.

In Harrell, a defendant invoked the Fifth Amendment when the plaintiffs attempted to depose him. Harrell, 951 F.2d at 1464. The magistrate judge ruled that the defendant's invocation was improper and granted the plaintiffs' motion to compel, thereby requiring the defendant to answer all of the plaintiffs' questions upon redeposition, which he did. Id. The plaintiffs at trial attempted to admit into evidence the defendant's initial invocation. Id. The trial court

ruled that the probative value of that evidence was outweighed under Rule 403 by the risk of unfair prejudice. Id. We affirmed, reasoning that the defendant's initial invocation was of little probative value largely because of the fact that he had subsequently answered all of the plaintiffs' questions. Id. at 1465. Without discussion, we also noted our agreement with the district court that the risk of unfair prejudice to the defendant was impermissibly high. Id.

The common denominator between Farace and Harrell was our willingness to affirm each district court's exclusion of a witness's invocation where the witness's behavior subsequent to the invocation greatly decreased the invocation's probative value. Indeed, in Curtis we distinguished Farace and Harrell on this basis. There, an individual representing the corporate defendant refused to answer various questions during a deposition for fear of self-incrimination. Curtis, 174 F.3d at 673. The district court excluded from the trial the corporate representative's invocation in his individual capacity, concluding that its admission would be unduly prejudicial to the defendant corporation and of limited probative value. Id. We reversed. We first explained that "corporate entities may not assert a Fifth Amendment privilege," and therefore to sustain the district court's ruling would be to allow the corporate defendant to "reap the benefit of its corporate representative's invocation of the Fifth Amendment in his individual capacity." Id. at 674. We next emphasized the fact that, unlike in Farace and Harrell, the defendant never cooperated with the plaintiff. It followed that the probative value of the representative's invocation was high enough that the district court's exclusion of it amounted to an abuse of discretion. See id. at 674-75 ("In contrast, in the present case, Mr. Barrett never cooperated with Plaintiffs. Plaintiffs did not request another deposition, nor did Mr. Barrett appear at trial. The district court therefore abused its discretion in excluding the evidence of Mr. Barrett's invocation . . . .").

2. Application

Hinojosa provides no reason for us to conclude that Butler's invocation might have compelled a different verdict with regard to his deliberate indifference claim. Because the probative value of Butler's invocation is thus weak in this regard, we cannot conclude that the district court's ruling unfairly weakened Hinojosa's deliberate indifference claim.

A review of the record, however, makes plain that the fate of Hinojosa's excessive force claim turned on credibility; whether the jury believed that Butler used excessive force against Hinojosa turned on the extent to which Butler's characterization of Hinojosa's behavior, and the threat he posed, was credible. To prove that the force applied by Butler was gratuitous, Hinojosa sought to offer evidence that Butler had a habit of dishonesty in doing his job, or in justifying certain acts committed while on the job, and therefore that his characterization of events on the night in question deserved little credence. Given that there were no witnesses to the arrest, credibility was paramount at trial. Butler's refusal to discuss, for risk of self-incrimination: (1) his admitted dishonesty in explaining why he had fired his service weapon; (2) his alleged violation of internal rules in order to protect a City employee; (3) his alleged dishonesty in claiming that his patrol car was involved in a collision; and (4) the fact that his resignation from the SAPD followed these incidents, would have damaged, and was thus highly probative as to, Butler's credibility.

Butler downplays the probative value of his invocation, and urges us to conduct an after-the-fact Rule 403 balancing test, which would allegedly demonstrate that Hinojosa's questions regarding his prior conduct, and Butler's invocation, would have been more prejudicial than probative. With regard to probity, Butler notes that Hinojosa was already able to elicit through various witnesses damaging credibility testimony. For example, Hinojosa was able to elicit from Butler an admission that he had previously been admonished by superiors regarding his tendency to "make things up" in internal reports.

Hinojosa was also able to extensively examine witnesses regarding Butler's claim that he filed a use-of-force report after the incident, as he was required to do under SAPD policy, even though no report was ever discovered by Butler's superiors and was not on file with the SAPD. To be sure, this evidence was not complimentary to Butler. However, that Hinojosa was able to offer some damaging credibility evidence does not mean that his inability to admit more evidence, and evidence of a more damaging quality, was of no consequence to his case. Butler's invocation before the jury would have been appreciably more damaging to Butler's credibility than the testimony the jury did hear.

We have nevertheless recognized that a witness's invocation may be so prejudicial in certain circumstances as to warrant its exclusion under Rule 403. As we have stated:

> [T]he inference flowing from the plaintiff's assertion of his [F]ifth [A]mendment privilege may not be as one-sided as it at first appears, and herein lies the danger of unfair prejudice. The assertion of the privilege, particularly on the advice of counsel, is an ambiguous response. An attorney might advise her or his client not to answer questions simply as a safety measure lest the client disclose information that she or he may not even know to be criminal. . . . The jury may attach undue weight to the plaintiff's assertion of the privilege: The revelation that [the witness] has claimed the privilege marks him as a criminal who has probably eluded justice. The jury is not likely to realize that the innocent may invoke.

Farace, 699 F.2d at 210-211 (citation and internal quotation marks omitted). Thus, on the other side of the scale lies the inevitable prejudice Butler would have suffered in having to invoke the privilege before the jury.

In arguing that the risk of unfair prejudice was unacceptably high, Butler asserts:

> The jury would have been free to infer almost anything from Officer Butler's silence. For instance, nothing would have prevented the jury from inferring from Butler's silence that he had something to hide, that he was guilty of Plaintiff's accusations, that he was a

11

dishonest or a bad cop, that he was not trustworthy, or even that his lawyer gave him bad advice.

Many of these possible inferences are entirely permissible under Farace, Baxter, Curtis, and Rule 608(b). That is, the jury would have been permitted to conclude based on Butler's invocation that he was a generally dishonest person, and therefore his version of events should be discounted.

Although courts should vigilantly guard against unfair prejudice in this context, the qualifier "unfair" is not superfluous. "Prejudice" to one party is the natural and intended consequence of the admission of evidence by another. In order to be excluded under Rule 403, the asserted prejudice from a witness's invocation "must be more than the fact that the evidence is adverse to the opposing party." Farace, 699 F.2d at 211 n.8. In other words, "prejudice" does not necessarily mean "unfair prejudice." Thus, even under the Rule 403 test Butler urges us to conduct, in order to find that the district court's ruling was harmless here, we must conclude that the possible prejudice to Butler "substantially outweighed" the probative value of Butler's invocation to Hinojosa. See Fed. R. Evid. 403 (emphasis added). It did not.

The current case is more analogous to Curtis than to Farace and Harrell. We cannot conclude with confidence that the district court's erroneous refusal to allow Hinojosa to cross-examine Butler on his prior conduct was harmless. In contrast to Farace, nothing in the record indicates that Butler's silence is less indicting of his character than it first appears to be. Further, we are not convinced that the prejudice Butler would have suffered in this case had he been required to invoke the Fifth Amendment before the jury was more severe than the degree of prejudice naturally commensurate with such a requirement. In short, with respect to Hinojosa's excessive force claim, the district court's erroneous evidentiary ruling was not harmless. Accordingly, Hinojosa is entitled to a new trial with respect to his excessive force claim against Butler.

B. Municipal Liability

Hinojosa sought to hold the City liable for Butler's conduct. In his complaint, Hinojosa argued that his constitutional injuries were the proximate result of a policy or custom on the part of the City that granted to Butler "unfettered discretion to use force against its citizens and ignore the obvious medical needs of its citizens." He also premised his claim of municipal liability on the allegation that the SAPD failed to train and supervise its officers; according to Hinojosa, such "grossly inadequate supervision was caused by [the City's] deliberate indifference" to citizens' rights.

The district court granted the City summary judgment based on Hinojosa's failure to raise a genuine fact issue as to municipal liability. We review that decision de novo. Strong v. Univ. Healthcare Sys., L.L.C., 482 F.3d 802, 805 (5th Cir. 2007). We will affirm if the record indicates that "there is no genuine issue as to any material fact" and that the City was "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "The evidence and inferences from the summary judgment record are viewed in the light most favorable to the nonmovant." Minter v. Great Am. Ins. Co. of N.Y., 423 F.3d 460, 465 (5th Cir. 2005).

"[A] municipality may not be held liable under § 1983 solely because it employs a tortfeasor." Bd. of the County Comm'rs v. Brown, 520 U.S. 397, 403 (1997). Rather, "a plaintiff seeking to impose liability on a municipality under § 1983 [is required] to identify a municipal policy or custom that caused the plaintiff's injury." Id. (citing Monell v. New York City Dep't. of Soc. Servs., 436 U.S. 658, 694 (1978) (internal quotation marks omitted)). "The plaintiff must . . . demonstrate that . . . the municipality was the moving force behind the injury alleged," which requires him to prove a "direct causal link between the municipal action and the deprivation of federal rights." Id. at 404 (internal quotation marks omitted). To prove this causal link, a plaintiff may demonstrate either an express policy or a "persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and

promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." Bennett v. City of Slidell, 735 F.2d 861, 862 (5th Cir. 1984) (en banc).

To show a causal policy or custom, Hinojosa points to the fact that the SAPD retained Butler for years notwithstanding the repeated investigations of his conduct and his "pattern of making things up." He also points to the testimony of SAPD personnel to the effect that the SAPD generally does not investigate an officer's conduct if no formal complaint is filed against him, which allegedly demonstrates that the SAPD recklessly ignores complaints against its officers solely because those complaints do not conform with mere formalities. According to Hinojosa, these facts are sufficient to create a genuine fact issue that the SAPD created an "atmosphere which . . . engender[ed] excessive force and indifference to . . . citizens' medical needs." We disagree. Assuming the truth of the facts Hinojosa alleges in his appellate brief, Hinojosa would be able to show, at most, that the SAPD was negligent in not more aggressively monitoring Butler or regulating his conduct. Such evidence is insufficient to show that City regularly ignores, and thereby tacitly endorses, the use of excessive force and deliberate indifference by its officers.

Hinojosa also provides various statistical information. For example, he notes that between 2001 and 2005, 258 complaints of excessive force were lodged against SAPD officers, which resulted in only eighteen incidents of discipline. Hinojosa believes this evidence demonstrates the City's tolerance of officer misconduct. These statistics, however, beg more questions than they answer. For example, Hinojosa provides no reason for a rational fact finder to conclude that most of the incidents complained of actually involved an officer using an unconstitutional level of force, or that the number of complaints filed against SAPD officers is high relative to other metropolitan police departments.

A § 1983 plaintiff can also establish a municipal policy or custom by showing that the municipality failed to adequately train and supervise its

officers.  City of Canton v. Harris, 489 U.S. 378, 388 (1989).  "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  Id.  Further, in order for "liability to attach in this circumstance the identified deficiency in a city's training program must be closely related to the ultimate injury."  Id. at 391.  Thus, it is not enough for a plaintiff to show that the municipality's training program is, in a general sense, wanting.  Rather, the plaintiff must prove an affirmative answer to the question "Would the injury have been avoided had the employee been trained under a program that was not deficient in the identified respect?"  Id. (emphasis added).

> Hinojosa argues that:
>
> no supervisor ever went to the scene . . . and no supervisor ever had the opportunity to review the alleged Use of Force Report.  Further, training appears lacking in that the need for . . . Butler to have training about his tendency to 'make things up' was noted but the problem apparently never corrected. . . . The City of San Antonio[] simply failed to train and/or supervise . . . Butler to understand the seriousness of committing misconduct then lying about it.

Hinojosa simply fails to point to evidence that the SAPD failed to train its officers specifically with regard to avoiding the use of excessive force or to the provision of necessary medical care to injured detainees.  Rather, he alleges only that the City complacently failed to monitor and discipline Butler as aggressively as possible; not only do such allegations fall short of articulating deliberate indifference, they fail to allege training deficiencies specifically with regard to excessive force and the provision of necessary medical care.  As such, Hinojosa has failed to point to evidence in the record giving rise to a genuine fact issue as to whether an SAPD custom or policy caused his injuries, and therefore the district court did not err in granting the City summary judgment.

## III. CONCLUSION

We REVERSE the judgment of the district court with respect to Butler's liability for excessive force and REMAND for a new trial on that issue.  In all other respects, the judgment of the district court is AFFIRMED.