**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No. 98-50147
(Summary Calendar)

_____

In the MATTER OF AL COPELAND
ENTERPRISES, INC., Debtor

GEORGE SAMARAS,

Appellant,

versus

AMERICA'S FAVORITE CHICKEN
COMPANY INCORPORATED,

Appellee.

_____

Appeal from the United States District Court
for the Western District of Texas

_____

September 16, 1998

Before WIENER, BARKSDALE, and EMILIO M. GARZA, Circuit Judges.

WIENER, Circuit Judge:

Appellant George Samaras ("Samaras") appeals the bankruptcy court's order —— affirmed by the district court —— disallowing under the Chapter 11 reorganization plan of Appellee America's Favorite Chicken Company, Inc. ("AFC"), Samaras's claim for attorney's fees, costs, and interest awarded in a state lawsuit. Concluding that the bankruptcy court's holding is correct, we affirm.

# I

## FACTS AND PROCEEDINGS

In 1990, Samaras sued Al Copeland Enterprises, Inc. ("ACE") in Texas state court for breach of contract. ACE subsequently filed for protection under Chapter 11 of the United Sates Bankruptcy Code, and Samaras filed a proof of claim in the bankruptcy proceeding. The bankruptcy court approved a reorganization plan for the debtor ACE. As part of the reorganization, AFC was incorporated as a separate, on-going enterprise. The parties then agreed to return the case to state court to liquidate Samaras's contract claim, substituting AFC as the defendant. In 1993, the bankruptcy court entered an order ("1993 Order") permitting them to do so. The 1993 Order provided that "upon the exhaustion of any appeals or writs of certiorari or in the event of settlement, the liquidated amount, if any, or [sic] such judgment . . . shall be deemed allowed" under ACE's reorganization plan and "shall be paid in accordance with" the plan's provisions.

Samaras prevailed on his contract claim in state court. In addition to actual damages of $1,522,586, Samaras was awarded $686,178.70 in attorney's fees and costs. Under Texas law, the entire judgment is subject to interest of 10% per annum.[1] Although AFC argued that the award of attorney's fees, costs, and interests was not allowable under bankruptcy law, the Texas trial court refused to consider the issue, holding that it had no jurisdiction to decide the question of federal law. AFC then returned to the bankruptcy court seeking clarification of that court's order, specifically whether the bankruptcy court intended the state court to decide such subsidiary questions of federal law. In 1995, the bankruptcy court entered an order ("1995 Order") clarifying that it had intended just that.

---

[1] Tex. Rev. Civ. Stat. Ann. art. 5069-1.05 (West Supp. 1997)

Thus armed, AFC argued to the Texas appellate court that the lower court incorrectly refused to consider the allowability of the attorney's fees, costs, and interest under federal law. Following the trial court's lead, however, the appellate court too refused to address the bankruptcy law question, and simply affirmed the award. The Texas Supreme Court denied AFC's application for a writ of error. Thus rebuffed again, AFC returned to the bankruptcy court for a third time, filing a motion to disallow the contested aspects of the award, as (1) they were clearly not recoverable under federal law, and (2) the Texas courts had incorrectly refused to consider the issue. In September, 1997, the bankruptcy court granted AFC's motion ("1997 Order"), and Samaras timely filed a notice of appeal.

## II

## ANALYSIS

A.      Standard of Review

The issues presented in this appeal are questions of law, which we review de novo.[2]

B.      Applicable Law

The bankruptcy court did not explicitly state the basis for the 1997 Order that disallowed the contested aspects of Samaras's claims. Samaras characterizes the 1993 Order as an abstention order and argues that the bankruptcy court, having turned over to the state court all aspects of Samaras's claim in that abstention order, lacked jurisdiction to enter the 1997 Order. Samaras further contends that, even assuming that the bankruptcy court had jurisdiction to enter the 1997 Order, AFC waived its right to have the federal court determine the bankruptcy issue when AFC freely agreed to remove all aspects of the parties' dispute to the state court system. Finally, again assuming jurisdiction,

---

[2]      Bennett v. Bennett (In re Bennett), 989 F.2d 779, 781 (5th Cir 1993).

Samaras asserts that, as the 1993 Order was a final order, the bankruptcy court abused its discretion when it granted AFC relief under Federal Rule of Civil Procedure 60(b).[3] AFC, like Samaras, frames its arguments in terms of abstention and Rule 60(b), albeit that AFC disagrees with Samaras's contentions on all counts.

1.    Jurisdiction

A bankruptcy court may "in the interest of justice, or in the interest of comity with State courts or respect for State law" abstain from hearing a Title 11 controversy.[4] Samaras argues that once a federal court enters an abstention order relinquishing jurisdiction over a case, the abstaining court cannot reclaim the case unless it has explicitly retained jurisdiction in the abstention order. We need not assess the merit of Samaras's position because in the 1993 Order the bankruptcy court did reserve jurisdiction over the Samaras's claim. The order provided that, once liquidated, Samaras's claim would be deemed allowed under AFC's reorganization plan and would be paid accordingly. The bankruptcy court indisputably had jurisdiction over the administration of the reorganization plan, including the processing of Samaras's liquidated claim thereunder. Although Samaras is likely correct when he notes that the bankruptcy court did not envision having to do anything more than "plugging" the claim back into the reorganizat ion plan, the court's expectation cannot somehow void the jurisdiction it retained over the matter in the 1993 Order.

2.    Waiver

Samaras's second contention —— that, by consenting to the 1993 Order permitting the

---

[3]    Samaras does not argue that bankruptcy law permits him to recover the contested attorney's fees, costs, and interest; neither does he argue that the Texas courts lacked jurisdiction to consider the federal issue.

[4]    28 U.S.C. § 1334(c)(1) (1994).

4

parties to return to state court, AFC waived its right to have the allowability of the fees, costs, and interest determined by a federal court —— is somewhat more meritorious. Samaras rests his argument primarily on England v. Louisiana State Board of Medical Examiners.[5] In England, the Supreme Court addressed whether a party may, within the context of abstention, waive his right to return to federal court for final determination of his claim. Relying on its earlier decision in NAACP v. Button,[6] the Court held that "if a party freely and without reservation submits his claims for decision by the state courts, litigates them there, and has them decided there, then -- whether or not he seeks direct review of the state decision in this Court -- he has elected to forgo his right to return to the District Court."[7] The Court made clear, however, that a party cannot be denied his right to return to federal court unless he "fully litigated" his claims in state court.[8]

Not surprisingly, Samaras contends that AFC voluntarily submitted to the jurisdiction of the state courts of Texas, and that, as both parties briefed and argued their positions at every stage of the litigation, the federal question at issue was "fully litigated." AFC responds that the federal question manifestly was not "fully litigated" because the Texas courts —— trial, appellate, and Supreme —— refused to consider the issue at all. In Front Royal and Warren County Industrial Park Corporation v. Town of Front Royal Virginia,[9] a case not cited by either party, the Fourth Circuit addressed this exact issue. There, as here, the state courts refused to consider the federal claims

---

[5]     375 U.S. 411 (1964).

[6]     371 U.S. 415, 427-428 (1963).

[7]     England, 375 U.S. at 419.

[8]     Id. at 421-22.

[9]     135 F.3d 275 (4th Cir. 1998).

presented. The Front Royal court held that the plaintiff's federal claims had not been fully litigated as required by England, stating "[w]e can see no warrant for finding voluntary waiver of England-type rights where . . . the state court expressly refuses to reach the federal claims presented to it out of concerns for comity."[10] We agree with this reasoning.

Federal courts take very seriously the strict duty to exercise jurisdiction conferred on them, relinquishing that jurisdiction only under specified circumstances.[11] Accordingly, abstention is viewed as an extraordinary measure —— "the exception, not the rule."[12] Although, as England instructs, a party may voluntarily waive his right to avail himself of the federal court system, such a waiver is no light matter. The Supreme Court has specified strict limitations on this kind of waiver, including the requirement that the federal claim be fully litigated and decided by the state court. More generally, waiver is defined as "the intentional relinquishment or abandonment of a known right."[13]

In no way can AFC be said to have intentionally relinquished or abandoned its right to have its federal claim heard in federal court. In short, we, like the Fourth Circuit, see no merit in the proposition that a litigant can be deprived of his access to federal court simply because the state

---

[10]     Id. at 284 n. 4; see also Ivy Club v. Edwards, 943 F.2d 270, 281 (3d Cir. 1991) (considering fact that state courts had not decided federal claims in determining that plaintiff had not made England waiver), cert. denied Del Tufo v. Ivy Club, 503 U.S. 914 (1992); Silverman v. Browning, 414 F. Supp. 80, 85 (D. Conn.) (holding plaintiff had not waived its right to return to federal court after entry of abstention order because state courts had refused to consider federal claims on procedural grounds), aff'd 429 U.S. 876 (1976).

[11]     Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976) (Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given to them.").

[12]     Id. at 813.

[13]     Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1420 (quoting United States v. Olano, 507 U.S. 725, 733 (1993)).

6

courts, through no fault of that litigant, refuse to entertain and dispose of the federal claims presented. When, following a federal court's entry of an abstention order, the cognizant state courts expressly refuse to consider the federal issues in the case, those issues have neither been fully litigated nor decided. We hold that, under such circumstances, the litigant has not waived his right to return to federal court.

### 3. Rule 60(b)

Thus, Samaras is left with only his Rule 60(b)(6) argument. We review a trial court's grant of a Rule 60(b) motion for abuse of discretion.[14] Under Rule 60(b)(6), which is made applicable to bankruptcy proceedings by Bankruptcy Rule 9024,[15] a court has the authority to relieve a party from a final order for any "reason justifying relief from the operation of the judgment."[16] In Seven Elves, Incorporated v. Eskanzi,[17] we set forth several factors relevant to considering a motion under Rule 60(b)(6), including (1) whether the motion was made within a reasonable time, (2) whether the movant had a fair opportunity to present his claim or defense, and (3) whether granting relief would be equitable.[18] Here, each of these factors weighs heavily in favor of sustaining the bankruptcy court's grant of AFC's Rule 60(b)(6) motion. AFC first pursued relief in state court all the way from the trial court to the Texas Supreme Court, and then made its Rule 60(b)(6) motion only after relief in state court was no longer available. AFC could not have anticipated that the Texas state courts

---

[14] Picco v. Global Marine Drilling Co., 900 F.2d 846, 851 (5th Cir. 1990).

[15] Fed. R. Bankr. P. 9024.

[16] Fed. R. Civ. P. 60(b)(6).

[17] 635 F.2d 396 (5th Cir. 1981).

[18] Id. at 402.

7

would refuse to hear its claim. In fact, when AFC was first alerted to such a possibility, it returned to the bankruptcy court to have the matter clarified. Under these circumstances, AFC's Rule 60(b)(6) motion was timely and providently made. Moreover, as the foregoing discussion regarding waiver indicates, because the state courts refused to hear its arguments, AFC did not have a fair opportunity to present them to the state courts. For the same reason, we conclude that to deny AFC a federal determination of the allowability of the fees, costs, and interest portion of Samaras's claim would be inequitable. As such, the bankruptcy court did not abuse its discretion when it granted AFC's Rule 60(b)(6) motion.

## III

## CONCLUSION

The bankruptcy court did not lack the jurisdiction to disallow the contested portion Samaras's claim, given that court's indisputable retention of jurisdiction over the administration of AFC's reorganization plan. Moreover, AFC did not waive its right to have the bankruptcy court make that determination because —— through no fault of AFC —— the federal issue was not fully litigated in the courts of Texas. Finally, the bankruptcy court did not abuse its discretion in granting AFC's Rule 60(b)(6) motion, as the refusal of the Texas courts to consider the federal issue provided the bankruptcy court with ample justification for revisiting Samaras's claim. Accordingly, the ruling of the bankruptcy court, affirmed by the district court, is in all respects,

AFFIRMED.