IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 99-20111
Summary Calendar
_____

B DELL FELDER, PhD,

     Plaintiff-Appellant,

  v.

WILLIAM P HOBBY,

     Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas
(H-98-CV-17)
_____

October 20, 1999

Before KING, Chief Judge, and POLITZ and DENNIS, Circuit Judges.

PER CURIAM:[*]

   Plaintiff-appellant B. Dell Felder appeals the district court's award of summary judgment based on qualified immunity to defendant-appellee William P. Hobby in this suit alleging civil rights violations under § 1983.  We affirm.


I.

_____

    [*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.


1

Plaintiff-appellant B. Dell Felder ("Felder"), a tenured faculty member of the University of Houston, served as Vice-Chancellor for the University of Houston System (the "System") from 1990 until January 1996. As Vice-Chancellor, Felder oversaw the System's public television station. She was a strong advocate for a multi-million dollar expansion of the station's facilities to be used for distance learning, a program that the majority of the University of Houston faculty members vehemently opposed.

Defendant-appellee William P. Hobby ("Hobby") became the System's Chancellor on September 1, 1995. On January 5, 1996, Hobby removed Felder from the Vice-Chancellor position. Felder alleges that Hobby, responding to pressure from the faculty, justified her discharge by falsely accusing her of withholding information from him regarding a 1991 Attorney General Opinion. That opinion held that state funds could not be used for the proposed expansion of the television facilities. Felder alleges further that Hobby relayed this accusation to members of the System's Board of Regents, the University community, and the media. An article appearing in the Houston Press stated, "Felder had not made the regents aware of [the Attorney General's] opinion or the fact that UH campus presidents had been pressured by Felder into supporting the allocation."

Felder submitted her letter of resignation, effective January 31, 1997, from the University of Houston faculty.

Felder filed this § 1983 action alleging that Hobby had removed her from the vice-chancellor position in retaliation for her exercise

2

of First Amendment rights, in deprivation of her "liberty interest" in her reputation without due process and in deprivation of her property interests in both her administrative and faculty positions without due process.  Hobby filed motions for a Rule 7 Reply ("Reply") to his affirmative defense of qualified immunity and for a stay of discovery pending a decision on that defense.  Both were granted.  After receiving Felder's Reply, Hobby filed a motion for summary judgment on the basis of qualified immunity.  The district court granted the motion, concluding that Hobby had not violated clearly established constitutional rights when he removed Felder and that his conduct was not objectively unreasonable.  Felder's motion for reconsideration was denied, and she timely filed this appeal.

## II.

We review a district court's grant of a motion for summary judgment de novo, applying the same standards as the district court.  See Ellison v. Connor, 153 F.3d 247, 251 (5th Cir. 1998); Norman v. Apache Corp., 19 F.3d 1017, 1021 (5th Cir. 1994).  After consulting applicable law to ascertain the material factual issues, we consider evidence bearing on those issues, viewing the facts and inferences therefrom in the light most favorable to the nonmovant.  See King v. Chide, 974 F.2d 653, 656 (5th Cir. 1992).  We resolve factual controversies in favor of the nonmoving party, but only when an actual controversy exists, that is, when both parties have submitted evidence of contrary facts.  See McCallum Highlands, Ltd. v. Washington Capital Dus, Inc., 66 F.3d 89, 92

(5th Cir. 1995). Conclusory allegations, speculation, and unsubstantiated assertions are not evidence. See Douglass v. United States Auto. Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996). Summary judgment is properly granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

We review a district court's ruling on a Rule 59 or Rule 60 motion for reconsideration for abuse of discretion. See Jones v. Central Bank, 161 F.3d 311, 312 (5th Cir. 1998); Samaras v. America's Favorite Chicken Co., (In re Al Copeland Enters., Inc.), 153 F.3d 268, 271 (5th Cir. 1998), cert. denied, 119 S. Ct. 1251 (1999).

### III.

An official is entitled to qualified immunity "'unless it is shown that, at the time of the incident, he violated a clearly established constitutional right.'" Mangieri v. Clifton, 29 F.3d 1012, 1015 (5th Cir. 1994) (quoting Spann v. Rainey, 987 F.2d 1110, 1114 (5th Cir. 1993)); see Siegert v. Gilley, 500 U.S. 226, 231 (1991). The plaintiff bears the burden of negating the defendant's claim of qualified immunity. See Foster v. City of Lake Jackson, 28 F.3d 415, 428 (5th Cir. 1994).

Determining entitlement to qualified immunity is a two-part inquiry. First, we must assess whether the plaintiff has alleged a

4

violation of a "clearly established constitutional right." <u>Siegert</u>, 500 U.S. at 231; <u>see</u> <u>Fontenot v. Cormier</u>, 56 F.3d 669, 673 (5th Cir. 1995). The contours of the right allegedly violated "must be sufficiently clear that a reasonable official would understand that what he is doing violates the right." <u>Meadowbriar Home for Children, Inc. v. Gunn</u>, 81 F.3d 521, 530 (5th Cir. 1996).

If the plaintiff has alleged a violation of a clearly established constitutional right, we then consider whether the official's actions were objectively reasonable. <u>See</u> <u>Mangieri</u>, 29 F.3d at 1016; <u>Spann</u>, 987 F.2d at 1114. "Objective reasonableness is assessed in light of legal rules clearly established at the time of the incident." <u>Mangieri</u>, 29 F.3d at 1016; <u>see</u> <u>Spann</u>, 987 F.2d at 1114. The individual defendant is entitled to qualified immunity if reasonable public officials could differ on the lawfulness of his actions. <u>See</u> <u>Malley v. Briggs</u>, 475 U.S. 335, 340 (1986). The subjective belief of the plaintiff as to the reasonableness of the defendant's actions is irrelevant to the qualified immunity issue. <u>See</u> <u>Pfannstiel v. City of Marion</u>, 918 F.2d 1178, 1184 (5th Cir. 1990). Similarly, "even an officer who subjectively intends to act unreasonably is entitled to immunity if his actions are objectively reasonable." <u>Id.</u> at 1187.

**A. First Amendment Claim**

Felder alleged that she was terminated from her administrative position in retaliation for her controversial advocacy of distance learning. As a public employee, Felder must

5

establish a claim of retaliation for the exercise of First
Amendment rights by alleging facts that meet a three-part test:
(1) her speech involved a matter of public concern, (2) her
interest in commenting on matters of public concern outweighed
Hobby's interest in promoting efficiency, and (3) her speech
motivated the decision to terminate her.  See Wallace v. Texas
Tech Univ., 80 F.3d 1042, 1050 (5th Cir. 1996); Coughlin v. Lee,
946 F.2d 1152, 1156-57 (5th Cir. 1991).

A court determines whether a public employee's speech
addresses a matter of public concern by examining the content,
form, and context of a given statement, as revealed by the whole
record.  See Connick v. Myers, 461 U.S. 138, 147-48 (1983);
Wallace, 80 F.3d at 1050.  "Because almost anything that occurs
within a public agency could be of concern to the public, we do
not focus on the inherent interest or importance of" the
employee's speech.  Terrell v. University of Texas Sys. Police,
792 F.2d 1360, 1362 (1986), cert. denied, 479 U.S. 1064 (1987).
Rather, the speech at issue is protected as a matter of public
concern if the employee is speaking primarily in her role as
citizen rather than in her role as employee.  See Connick, 461
U.S. at 147; Wallace, 80 F.3d at 1050.  We have said that a
public employee's speech "made in the role as employee is of
public concern only in limited cases:  those involving the report
of corruption or wrongdoing to higher authorities."  Wallace, 80
F.3d at 1051.

6

Felder's advocacy of the distance learning program was made in her role as Vice-Chancellor rather than as a private citizen. Indeed, her complaint acknowledges that she, "in the proper discharge of her duties, was a strong advocate" of the program. According to Wallace, though, this speech does not constitute a matter of public concern because Felder did not allege that her statements involved "the report of corruption or wrongdoing." Id.; see also Warnock v. Pecos County, 116 F.3d 776, 780 (1997)(citing Wallace for proposition that plaintiff's speech as employee was matter of public concern because she was reporting wrongdoing). When an employee's speech does not address a matter of public concern, our inquiry ends. See Connick, 461 U.S. at 146 (establishing that if public employee's speech does not touch upon matter of public concern, the First Amendment does not prevent termination); Wallace, 80 F.3d at 1051; Coughlin v. Lee, 946 F.2d 1152, 1156-57 (5th Cir. 1991).

On appeal, Felder contends that Wallace does not define every circumstance in which statements made in the role of employee are protected by the First Amendment as a matter of public concern. Even if Felder is correct (and she may well be correct) and we conclude that the facts she alleged arguably satisfied the first prong of our inquiry, the evidence she produced would nevertheless be subjected to the second prong's balancing test.

The second prong requires a balancing of Felder's interest in advocating the distance learning program against Hobby's interest in maintaining harmony and efficiency at the University of Houston. See Connick, 461 U.S. at 142; Warnock, 116 F.3d at 780. The district court correctly noted that an employer has greater discretion to penalize an employee for her official speech when the employee holds a high-level policy-making position. See Rash-Aldridge v. Ramirez, 96 F.3d 117, 120 (5th Cir. 1996); Kinsey v. Salado Indep. School Dist., 950 F.2d 988, 992-96 (5th Cir. 1992)(en banc), cert. denied, 504 U.S. 941, 112 S.Ct. 2275 (1992); Gonzalez v. Benavides, 712 F.2d 142, 148 (5th Cir. 1983). Felder was a high-level policy-maker who, by her own admission, was advocating an "almost unanimous[ly]" opposed policy. Hobby was her employer with an "interest in having the employee contribute to the smooth operation of the workplace." Warnock, 116 F.3d at 780.

On appeal, Felder contends that the district court erred by going beyond the qualified immunity inquiry and deciding the balancing test on the merits. Whatever the result of that balance, however, the district court properly noted that the results of individual balancing tests can rarely define a "clearly established" constitutional right for qualified immunity purposes. See Pierce v. Smith, 117 F.3d 866, 883 n.21 (5th Cir. 1997) (citations omitted). As such, the district court properly

8

found that Hobby's decision to remove Felder from the Vice-Chancellor position was objectively reasonable in light of clearly established First Amendment law. We agree that Hobby is entitled to qualified immunity on this claim.

## B. "Liberty interest" claim

To establish a deprivation of her liberty interest in her reputation without due process of law, Felder must first allege facts establishing that her liberty interest was implicated—namely, that she was terminated based on charges that were (1) false, (2) publicized, and (3) stigmatizing to either her standing or reputation in her professional community or her ability to find other employment. See Board of Regents of State Colleges v. Roth, 408 U.S. 564, 573 (1972); Cabrol v. Town of Youngsville, 106 F.3d 101, 107 (5th Cir. 1997); Moore v. Mississippi Valley State Univ., 871 F.2d 545, 549 (5th Cir. 1989).

According to Felder's Reply, Hobby stated in a conversation with Felder that "he would take the position that plaintiff had not informed Defendant Hobby" of the Attorney General's opinion. Felder alleged that Hobby communicated this false assertion "to members of the Board of Regents, to individuals within the University community, and to media representatives." To support this claim, she quoted an article in the Houston Press written one month after her removal. In it, the reporter discussed the potential for allocation of state funds for the station and

9

stated that "the official in charge of the effort, senior vice chancellor Dell Felder, had not made the regents aware of [the Attorney General's] opinion."

The district court concluded that the statement was insufficiently stigmatizing to implicate a protected liberty interest. "A moral stigma such as immorality or dishonesty is required to show a deprivation of liberty." Ludwig v. Board of Trustees of Ferris State Univ., 123 F.3d 404, 410 (6th Cir. 1997)(citing Roth, 408 U.S. at 573). In contrast, charges of inadequacy, inefficiency, or incompetence do not carry with them the sort of opprobrium necessary to constitute a deprivation of liberty. See id.; Cabrol, 106 F.3d at 108. The district court found that Hobby's statement was an accusation of Felder's neglect of her duties, rather than one of her dishonesty, and thus Felder had failed to allege facts establishing a deprivation of her liberty interest.

On appeal, Felder contends that the district court misunderstood its duty at summary judgment and failed to construe the facts in her favor. She claims that Hobby's statement was an actionable accusation of her dishonesty, rather than an insufficient implication of neglect, and the district court erred in finding otherwise. We disagree.

First, whether or not a fact (here, Hobby's statement) satisfies an element of a claim is a question of law. The district court was not bound by the conclusions of Felder or her counsel.

Second, Hobby's statement did not rise to the level of an actionable imposition of "moral stigma."  Such stigma usually derives from serious, specific charges and implies an inherent, or at least persistent, personal condition which both potential employers and one's peers would want to avoid.  For example, dismissals for dishonesty, see White v. Thomas, 660 F.2d 680, 684-85 (5th Cir. 1981), cert. denied, 455 U.S. 1027 (1982)(lying on job application); Robinson v. Wichita Falls & North Texas Community Action Corp., 507 F.2d 245 (5th Cir. 1975)(falsifying travel vouchers), for having committed a serious felony, see United States v. Briggs, 514 F.2d 794, 798 (5th Cir. 1975), for manifest racism, see Wellner v. Minnesota State Junior College, 487 F.2d 153 (8th Cir. 1973), for serious mental illness, see Lombard v. Board of Education, 502 F.2d 631 (2d Cir. 1974) cert. denied, 420 U.S. 976 (1975), and for lack of "intellectual ability, as distinguished from his performance...," see Greenhill v. Bailey, 519 F.2d 5 (8th Cir. 1975), have been held to implicate a protected liberty interest.

The statement that Felder "had not informed" or "had not made the regents aware" merely suggests inadequate job performance, a situational difficulty rather a "'badge of infamy,' public scorn, or the like."  Ball v. Board of Trustees of Kerrville Indep. Sch. Dist., 584 F.2d 684, 685 (5th Cir. 1978), cert. denied, 440 U.S. 972 (1979); see also Wells v. Hico Indep. Sch. Dist., 736 F.2d 243, 256 & n.16 (5th Cir. 1984)(noting that "for a charge to be stigmatizing, it must be

11

worse than merely adverse"). As such, its publication did not deprive Felder of her liberty interest in her reputation. <u>See, e.g.</u>, <u>Vander Zee v. Reno</u>, 73 F.3d 1365, 1369 (5th Cir. 1996)(accusation of exercising "poor judgment" not sufficiently stigmatizing to implicate liberty interest); <u>Blackburn v. City of Marshall</u>, 42 F.3d 925, 936 (5th Cir. 1995)(newspaper article containing adverse comments on plaintiff's qualifications and attitude insufficient); <u>O'Neill v. City of Auburn</u>, 23 F.3d 685, 691 (2nd Cir. 1995)(charge of "incompetence" and sloppy work insufficient); <u>Connolly v. Comptroller of the Currency</u>, 876 F.2d 1209, 1215 (5th Cir. 1989)(public statement that plaintiff lacked qualifications insufficient); <u>Huffstutler v. Bergland</u>, 607 F.2d 1090, 1092 (5th Cir. 1979)(rating of honesty as "unsatisfactory" insufficient); <u>Stretten v. Wadsworth Veterans Hospital</u>, 537 F.2d 361 (9th Cir. 1976)(incompetence, inability and unwillingness to deal with co-workers in a professional manner insufficient).

## C.  Due Process Claim—Administrative Position

Procedural due process requires notice and an opportunity to be heard before one can be deprived of a protected property interest. <u>See</u> <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 545 (1985).  Felder alleged that a "consistent policy of not summarily dismissing senior administrators, but of providing transitional periods of compensated leave, return to tenured positions and other benefits" gave her a clearly established property interest in her Vice-Chancellor position.  Therefore, she was entitled to due process before being removed.  The

12

district court found that the "consistent policy" did not create a property interest under Texas law. We agree.

To create a property interest in employment, an employee must have a legitimate claim of entitlement created and defined "by existing rules or understandings that stem from an independent source such as state law...." Roth, 408 U.S. at 577. Under Texas law, employment is at-will unless the employer "unequivocally indicate[s] a definite intent to be bound not to terminate the employee except under clearly specified circumstances." Montgomery County Hospital Dist. v. Brown, 965 S.W.2d 501, 502 (Tex. 1998).

We agree with the district court that, absent an express agreement, the System's "consistent policy" with respect to senior administrators does not create a property interest in Felder's administrative employment under Texas law. Felder insists, however, that the district court erred because the reasoning in Perry v. Sindermann, 408 U.S. 593 (1972), gives her a property interest in her administrative position based on this "consistent policy." In Perry, an untenured instructor whose contract was not renewed relied on de facto tenure provisions in an official Faculty Guide to raise a genuine issue as to his property interest in employment. The provisions in Perry related directly to expectations in continued employment. Here, Felder relies on a policy that indicates how administrators are usually

13

terminated.  It is well-settled that the existence of termination procedures does not create a property interest in one's employment.  See Loudermill, 470 U.S. at 541; Evans v. City of Dallas, 861 F.2d 846, 850 (5th Cir. 1988); Cote v. Rivera, 894 S.W.2d 536, 541 (Tex. 1995).  The district court, therefore, properly granted summary judgment on this issue.

**D.  Due Process Claim—Tenured Position**

As a tenured professor, Felder had a constitutionally protected property interest in her faculty position.  See Roth, 408 U.S. at 576.  She alleged she was deprived of this interest without due process because "[i]n order to protect her interests, [she] was required to submit her letter of resignation from her tenured faculty position...."  The district court found that Felder voluntarily resigned her position, she was not removed; even if she had believed her "required" resignation improper, she failed to invoke her procedural protections by requesting a hearing; and Hobby's failure to provide a hearing that was not requested was not objectively unreasonable.

Felder argues on appeal that the district court erred in denying her motion for reconsideration with respect to this claim.  In her motion, she requested the opportunity to replead and conduct limited discovery because she had new information, "of which she was previously not aware because of the stay of discovery, which would establish a fraudulent scheme to deprive Felder of her faculty tenure rights."  She claimed that, as part

14

of this scheme, Hobby had made "specific promises" in order to induce her to forego her rights to a hearing, and she had relied on these promises "until so much time had passed that further delay was intolerable and [she] was constructively discharged...."

The defense of qualified immunity protects officials from not only the costs of trial but also the burdens of discovery. See Harlow v. Fitzgerald, 457 U.S. 800, 817-18 (1982); Jacquez v. Procunier, 801 F.2d 789, 791 (5th Cir. 1986). Before the question of immunity is resolved, a plaintiff is entitled to discovery only if she has supported a claim with sufficient specificity to raise a factual issue as to the legality of defendant's conduct. See Schultea v. Wood, 47 F.3d 1427, 1434 (5th Cir. 1995); Lion Boulos, 834 F.2d 504, 507-08 (5th Cir. 1987). The district court did not abuse its discretion in concluding that Felder failed to meet this standard.

Although Felder based her request for discovery on "new" information, the information involved allegations identical to those already asserted in her Reply-Hobby's broken promises and undue delays, intimations of fraud, and involuntary resignation.[1] Her motion for reconsideration differed from her Reply only in

---

[1]Specifically, she alleged in her Reply that Hobby "suggest[ed] that plaintiff accept certain benefits in exchange for the voluntary waiver of tenure," (¶4.5) and "investigat[ed] other means of depriving plaintiff of her tenure" (¶4.6); that Hobby "indicated at various times a willingness to provide the required corrective action," (¶4.9) but that he "unduly delayed and caused tentative agreements reached to be abrogated" (¶4.10); and that, as a result, she was "required" ro resign. (¶4.11).

15

that she described these same circumstances as part of a "fraudulent scheme" and labeled her "required" resignation a "constructive discharge."  The district court, however, had already concluded that, even if these allegations were true, Felder could not defeat Hobby's qualified immunity defense. Fatal to her procedural due process claim was her failure to request a hearing.  This failure would remain detrimental to her due process claim even if discovery revealed that Hobby *had* plotted a fraudulent scheme.  See Rathjen v. Litchfield, 878 F.2d 836, 839-40 (5th Cir. 1989)(plaintiff who failed to take advantage of available procedural safeguards was neither denied due process nor constructively discharged, notwithstanding jury finding that plaintiff was fraudulently induced to forego hearing).  Thus, it was not an abuse of discretion to deny the discovery and repleading of irrelevant information.

IV.

For the foregoing reasons, we AFFIRM the judgment of the district court, which granted summary judgment to defendant-appellee Hobby, and AFFIRM the district court's denial of plaintiff-appellant Felder's motion for reconsideration to allow repleading and discovery.

16