# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 4, 2010

No. 08-30908

Charles R. Fulbruge III
Clerk

LINDY INVESTMENTS III, a Louisiana Limited Partnership; MAGNOLIA
CREEK APARTMENTS, a Louisiana Partnership

Plaintiffs - Appellants

v.

SHAKERTOWN 1992 INC; COMMERCE AND INDUSTRY INSURANCE CO
OF CANADA

Defendants - Appellees

Appeals from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:94-CV-4112

Before BARKSDALE, SOUTHWICK, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Lindy Investments III and Magnolia Creek Apartments (collectively, Lindy) contest the award of relief from judgment, under Federal Rule of Civil Procedure 60(b), to Shakertown 1992, Inc. In the light of Lindy's unreasonable delay in complying with the condition precedent for execution of the judgment

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

entered in 1998, the district court did not abuse its discretion in granting such relief to Shakertown. AFFIRMED.

## I.

In 1992, Shakertown sold Lindy shingles for use as siding on two apartment complexes in Louisiana. Soon after installation, the shingles showed signs of deterioration. In 1994, Lindy filed a redhibition action against Shakertown in Louisiana state court. *See* LA. CIV. CODE ANN. art. 2520 (defining redhibition as an action for rescission of a sale of a defective product). Shakertown removed the action to federal court.

In 1998, a jury found: although Lindy received $6,845 of value from its use of the shingles, it also suffered damages in the amount of $136,905 for "rescission of sale/reduction of purchase price"; $3,000 for "diminution of value"; and $14,063 in "reasonable expenses". Lindy did not, however, prevail on its claim for $1.8 million to remove and replace the shingles.

The district court entered judgment on 30 September 1998, reflecting the verdict, but also requiring Lindy to "return to Shakertown . . . the shingles made the subject of the rescission of sale as a condition precedent to the execution of any money judgment". No time limit was specified for the return. Our court affirmed, holding return of the defective product was necessary for rescission of sale. *Lindy Invs., L.P. v. Shakertown Corp.*, 209 F.3d 802, 807 (5th Cir. 2000).

Instead of returning the shingles and otherwise executing the judgment, Lindy continued to use them. Not until August 2007 did Lindy first advise Shakertown it was ready to return them and collect the 1998 money judgment.

As discussed *infra*, Shakertown refused to accept a shipment of shingles or pay the judgment. Instead, it moved the district court for Rule 60(b) relief,

claiming Lindy had nullified the judgment by continuing to use the shingles for eight years after our court affirmed Lindy's being required to return them. The district court granted the motion, concluding: "the continued use by [Lindy] of the purportedly defective product and the unreasonable delay in tendering its return" warranted relief under either Rule 60(b)(5) or (b)(6). *Lindy Invs., III, L.P. v. Shakertown Corp.*, 631 F. Supp. 2d 815, 822 & n.14 (E.D. La. 2008).

## II.

## A.

Lindy raises two procedural issues; each fails. It contends: the district court lacked subject-matter jurisdiction to amend the judgment after it was affirmed on appeal; and Shakertown's Rule 60(b) motion was untimely.

## 1.

The district court's subject-matter jurisdiction is reviewed *de novo*. *E.g.*, *In re Grand Jury Proceedings*, 115 F.3d 1240, 1243 (5th Cir. 1997). Lindy contends the district court lacked subject-matter jurisdiction because it did not first obtain our permission to revisit the judgment. Needless to say, Rule 60 is the vehicle by which relief from a judgment can be obtained in district court.

In the light of the changed circumstances, *i.e.*, Lindy's great delay in returning the shingles, the district court did not "'flout[] the mandate by acting on the motion'", *Lindy*, 631 F. Supp. 2d at 819 n.6; *see Standard Oil Co. of California v. United States*, 429 U.S. 17, 18 (1976) (holding appellate leave unnecessary for a district court to consider a 60(b) motion because "the appellate mandate relates to the record and issues then before the court, and does not purport to deal with possible later events").

2.

Federal Rule of Civil Procedure 60(c)(1) requires that a Rule 60(b)(5) or (b)(6) motion be made in a reasonable time. Our court reviews the district court's ruling on whether such a motion is timely for abuse of discretion. *See Matter of Al Copeland Enterprises, Inc.*, 153 F.3d 268, 271-72 (5th Cir. 1998).

Throughout the Fall of 2007, Lindy and Shakertown engaged in negotiations on whether the shingles would be returned; that November, Shakertown informed Lindy of its interpretation of the judgment as no longer valid; and,on 20 May 2008, Shakertown moved for relief eight days after receiving a letter from Lindy stating Lindy had tendered part of the siding and would soon execute on the judgment. The district court did not abuse its discretion in holding Shakertown's motion was timely.

B.

"[T]he decision to grant or deny relief under Rule 60(b) lies within the sound discretion of the district court and will be reversed only for abuse of that discretion. A district court abuses its discretion if it bases its decision on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Hesling v. CSX Transp., Inc.,* 396 F.3d 632, 638 (5th Cir. 2005) (alteration in original) (internal quotations and citations omitted). "The discretion under 60(b)(6) is said to be *especially broad* because relief may be granted under it when appropriate to accomplish justice." *Harrell v. DCS Equipment Leasing Corp.*, 951 F.2d 1453, 1458 (5th Cir. 1992) (emphasis added). At issue, then, is whether, when it ruled that extraordinary circumstances justified relief, the district court's decision rested upon an erroneous view of the law or a clearly erroneous assessment of the evidence. The ultimate question, however, remains

whether the district court abused its *discretion* ("individual judgment") in granting relief from the judgment. *See In re Grimland, Inc.*, 243 F.3d 228, 233 (5th Cir. 2001) ("Granting or denying a motion under Rule 60(b) is within the discretion of the district court, and we review that decision only for an abuse of discretion.") Contrary to the **Dissent** at 2, this decision must be accorded appellate deference. *See Pease v. Pakhoed Corp.*, 980 F.2d 995, 998 (5th Cir. 1993) ("[T]he decision to grant or deny a Rule 60(b) motion is committed to the sound discretion of the district court and *is accorded deferential review*". (emphasis added)). Otherwise, vesting the district court with discretion is meaningless.

As noted, the district court based its decision upon two alternate grounds: Rule 60(b)(5), which allows relief when prospective application of a judgment "is no longer equitable"; and Rule 60(b)(6), which allows relief "for any other reason that justifies" it. *Lindy*, 631 F. Supp. 2d at 822 & n.14. We need not reach the Rule 60(b)(5) grounds; instead, on this record and for the reasons that follow, Rule 60(b)(6) relief did *not* constitute an abuse of discretion. Nonetheless, to the extent the district court's reasoning under Rule 60(b)(5) is applicable to its decision, in the alternative, to grant relief under Rule 60(b)(6), we consider such reasoning.

Relief under Rule 60(b)(6) may only be granted in exceptional circumstances. *Hess v. Cockrell*, 281 F.3d 212, 216 (5th Cir. 2002). The district court implicitly concluded such circumstances were present because, *inter alia*, it concluded it was "patently unfair to the defendants" for Lindy "[t]o continue to use the allegedly defective product for eight more years and then expect restoration of the purchase price". *Lindy*, 631 F. Supp. 2d at 820. Given Lindy's

extended delay in complying with the condition precedent of the judgment, the district court granted relief from the judgment to Shakertown. (The dissent makes repeated mention of the *jury verdict*, *e.g.,* **Dissent** at 2, 3; the relief granted, however, was from the *judgment*, which included the condition precedent added by the district court and upheld by our court, *Lindy*, 209 F.3d at 807.)

1.

Concerning whether the district court's view of the evidence was clearly erroneous, the district judge who granted the Rule 60(b) relief also tried this action and was, therefore, familiar with all aspects, including the evidence at trial. That judge imposed the condition precedent in the 1998 judgment, which was a contested condition upheld by our court. *Lindy*, 209 F.3d at 807. Along this line, in granting Rule 60(b) relief, the district court noted:

> The Court is mindful that Shakertown . . . also prevailed on important issues at trial. There was no evidence introduced that any defect in the siding adversely affected the integrity of any building upon which it had been placed. The movers anticipated that the plaintiffs were seeking two sets of functional siding for the price of one, and the argument regarding return spotlighted the issue. The requirement of return was recognized by [this court and the Fifth Circuit] as part and parcel of the claim of redhibition.

*Lindy*, 631 F. Supp. 2d at 822. Although the court made this observation in its Rule 60(b)(5) analysis, the statement obviously applies to analysis under Rule 60(b)(6) as well.

No further evidence is required to show an injustice to Shakertown. It is fundamentally unjust for Lindy to vigorously contend (and convince a jury) that the shingles were worthless and completely defective, to continue to use them

for eight years, and then to seek recovery by offering finally to return them. In that regard, Lindy, in our court, strongly contested the condition of return of the goods. *Lindy*, 209 F.3d at 807. Lindy cannot lose that issue on appeal but then circumvent our mandate.

2.

No time limit having been imposed by the judgment for the return of the shingles, the final question is whether the district court's decision rested upon an erroneous view of the law. Louisiana courts have required in redhibition actions that the tender of goods be made within a reasonable time. *See e.g., Beneficial Fin. Co. of New Orleans v. Bienemy*, 244 So. 2d 275, 281 (La. Ct. App. 1971), *overruled on other grounds by Travelers Ins. Co. v. Sonnier*, 344 So. 2d 73, 74-75 (La. Ct. App. 1977); *Breaux v. Winnebago Indus., Inc.,* 282 So. 2d 763, 769 (La. Ct. App. 1973); *Starwood v. Taylor,* 434 So. 2d 1236, 1238 (La. Ct. App. 1983). Admittedly, those Louisiana cases address how, in claiming redhibition, an offer of tender of the defective goods must be made *before* pursuing the claim; therefore, they do not stand precisely for the point for which the district court cited them. Nevertheless, those cases do emphasize that Louisiana law does not contemplate retention of the defective goods for an extended period of time. And, although the **Dissent** at 5 is correct that the construction of federal judgments is a matter of federal law, it was not an abuse of discretion for the district court to consider Louisiana redhibition law persuasive.

The district court further relied upon, *inter alia*, *In re Rains*, 338 B.R. 99 (Bankr. E.D. Cal. 2006). In *Rains*, a bankruptcy petitioner refused to comply with the bankruptcy plan's directive that he request a withdrawal from his retirement plan. *Id*. at 102. Similar to the judgment at issue here, the

bankruptcy plan (which has the same binding effect as a judgment) did not specify a time for performance, but the *Rains* court held that Federal Rule of Civil Procedure 70, which governs the performance of judgments, logically contains a reasonable time requirement. *Id* at 103. The court therefore gave a trustee the power to withdraw the funds under Rule 70. *Id.*

Although we are considering a Rule 60(b)(6), not a Rule 70, motion, the reasoning is the same. Both rules concern the construction and effect of judgments. It was entirely proper for the district court to have imposed a reasonable-time requirement on a judgment for the equitable remedy of rescission in which Lindy was required to perform the specific act of returning the shingles. (Contrary to the **Dissent** at 7, that "[t]he judgment did not, to use the language of Rule 70, 'require[] [Lindy] . . . to perform any . . . specific act'", the judgment did require Lindy to perform the specific act of tendering the siding should it wish to collect the money judgment.) Needless to say, under Rule 60(b)(6), the district court has broad equitable powers to address Lindy's unreasonable delay. *See Harrell*, 951 F.2d at 1458 (noting Rule 60(b)(6) "is a grand reservoir of equitable power to do justice").

## III.

For the foregoing reasons, the judgment is AFFIRMED.

HAYNES, Circuit Judge, dissenting:

This case is a quintessential example of the maxim "Bad facts make bad law." The district court was presented with the unenviable task of addressing perceived wrongdoing by both sides: one which manufactured and sold defective shingles and one which waited many years to effectuate the remedy given it. Concluding that two wrongs have not been made right here, I respectfully dissent.

*Rule 60(b)(6)*

The majority upholds the district court's ruling on the grounds of Rule 60(b)(6), noting the deferential review standard of "abuse of discretion." Yet a review of the district court's opinion regarding Rule 60(b)(6) leaves little to which to give such deference. Indeed, the district court devotes only two sentences to this point.[1] No facts were found to which we would apply the deferential "clearly erroneous" standard. Indeed, no evidence of any sort was presented in support of the motion.[2] The only "fact" upon which the district court's ruling rests is the passage of time. I then turn to the heart of the matter: whether the

---

[1] The district court rested its decision on Rule 60(b)(5), thus relegating Rule 60(b)(6) to a footnote. The two sentences are as follows: "The Court finds that the movers are alternatively entitled to relief under Rule 60(b)(6), which is a catch-all provision that gives the court discretion to afford a party from an order for 'any other reason that justifies relief,' but is extraordinary relief requiring a showing of exceptional circumstances. 'The broad language of Fed. R. Civ. P. 60(b)(6) provides the court ample power to vacate judgments whenever such action is appropriate to accomplish justice.'" *Lindy Invs., III, L.P. v. Shakertown Corp.*, 631 F. Supp. 2d 815, 822 n.14 (E.D. La. 2008) (citations omitted). Its discussion of Rule 60(b)(5) was quite thorough, and I will address that below.

[2] Shakertown's motion attached only Lindy's attorney's letter attempting to return the siding. Lindy's response attached more counsel letters and the Affidavit of David Sanderson opining that the shingles as removed have no value. Shakertown's reply did not contest this evidence and, again, attached only attorney letters regarding the dispute over whether Lindy could still enforce the judgment by returning the shingles.

district court correctly applied the law—a question on which no appellate deference is due.

Rule 60(b)(6) is a "catchall" provision, "'a residual clause used to cover unforeseen contingencies; that is, it is a means for accomplishing justice in exceptional circumstances.'" *Steverson v. GlobalSantaFe Corp.*, 508 F.3d 300, 303 (5th Cir. 2007) (quoting *Stipelcovich v. Sand Dollar Marine, Inc.*, 805 F.2d 599, 604-05 (5th Cir. 1986)). It is well-settled that Rule 60(b), and particularly subsection (6), may be applied only in extraordinary cases. *See, e.g., Gonzalez v. Crosby*, 545 U.S. 524, 536-37 (2005); *Ackermann v. United States*, 340 U.S. 193, 199 (1950). Such extreme circumstances sometimes have been found in default judgment cases and the like. *See Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 402-03 (5th Cir. Unit A 1981).

Turning to the case in question, the district court's brief citation of legal authorities was correct as far as it went. It quoted the following sentence from our opinion in *Maddox v. Runyon*, 139 F.3d 1017, 1020 (5th Cir. 1998) (quoting *Harrell v. DCS Equip. Leasing Corp.*, 951 F.2d 1453, 1458 (5th Cir. 1992)): "'The broad language of Fed. R. Civ. P. 60(b)(6) provides the court ample power to vacate judgments whenever such action is appropriate to accomplish justice.'" *Maddox*, while containing this broad quote, did not authorize a district court's wholesale disregard of a jury verdict upon which judgment was entered. That case actually dealt with a motion for reconsideration of an interlocutory order partially denying a motion to dismiss for failure to state a claim. 139 F.3d at 1019–20. *Harrell*, upon which *Maddox* relied, was a case where the party against whom a default judgment was requested to be enforced was allowed to set aside the default.[3] 951 F.2d at 1459. In *L.M. Leathers' Sons v. Goldman*,

---

[3] *Harrell* is actually almost the opposite of the situation here. While the facts are somewhat complex, simply stated, in *Harrell*, various plaintiffs sued Trupin, an individual, and several corporate defendants. The corporate defendants defaulted, while Trupin litigated through a jury verdict. The jury absolved Trupin of any wrongdoing but found that he was the alter ego of the defaulting corporate

252 F.2d 188 (6th Cir. 1958), upon which Shakertown relies, the court affirmed a district court's setting aside of a consent judgment and setting the matter for trial.

Neither the seasoned district judge, the parties in their briefs, nor my esteemed colleagues cite or point to any authority for the complete setting aside of a judgment based upon a fully-litigated jury verdict eight years after it was affirmed with no possibility of alternative relief and upon no submission of evidence. None of the cases upon which Shakertown, the district court and the majority rely involved judgments upon a jury verdict where the jury winner becomes the Rule 60 loser without hope of any future recovery. Courts have used Rule 60(b)(6) to modify judgments to reform unlawful or inconsistent jury verdicts, *see, e.g.*, *Aczel v. Labonia*, 584 F.3d 52, 61–62 (2d Cir. 2009), to clarify disputed judgments, *see, e.g.*, *Kramer v. Gates*, 481 F.3d 788, 793 (D.C. Cir. 2007), to remedy violations of 28 U.S.C. § 455, *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864–65 (1988), and to vacate default judgments, *Harrell*, 951 F.2d at 1459, but never to simply vacate a money judgment based on a jury verdict where the result is not a new trial. Rule 60(b)(6) is applied more liberally in the contexts previously applied precisely because the result is to *allow* a trial to occur. *See id.* ("This court applies Rule 60(b) 'most liberally to judgments in default . . . [because] . . . truncated proceedings of this sort are not favored.'") (quoting *Seven Elves*, 635 F.3d at 403); *see also Ackerman*, 340 U.S. at 202. It follows that the greatest degree of caution in applying Rule 60(b)(6)

---

defendants. The plaintiffs then sought to enforce the default judgments against Trupin as alter ego. He, in turn, moved to set aside the default judgments under Rule 60(b), and the district court granted the motion. Thus, in addition to being a default judgment case, *Harrell* is one in which the effect of granting the motion was to follow the jury's verdict as to the answering defendant, not defeat it. "The trial court was obviously disturbed by the prospect of having to afford [plaintiffs] the ability to accomplish through default what they could not achieve through a trial by jury." 951 F.2d at 1459 (internal quotation marks and citation omitted). It then concluded that there "was no abuse of discretion in setting aside the default judgments so that those claims could be tried." *Id.*

is called for where the consequence, as here, is to *deprive* the parties of the results of an actively-litigated jury trial. Such caution was insufficiently exercised here: the district court heard no evidence before rendering its decision. In short, I have been unable to locate any case allowing the relief provided here in a similar situation to this case. The result reached by the majority, using the language of the majority, is certainly "fundamentally unjust."

Indeed, given that there is no precedent for this action under Rule 60(b)(6), I looked at analogous "delay-based" theories to see if they support the majority's conclusion. Statute of limitations is of no help to Shakertown, as Louisiana law, like many other states, provides ten years to collect a money judgment. LA. CIV. CODE ANN. art. 3501 (1994); *see also Andrews v. Roadway Express Inc.*, 473 F.3d 565, 568 (5th Cir. 2006) (holding that, pursuant to Federal Rule of Civil Procedure 69(a), state law governs the period of time for which a federal judgment is enforceable unless a specific federal statute applies). Laches—the equitable analog to the statute of limitations—seems the most analogous doctrine to that applied by the district court and the majority opinion. Laches requires delay and *undue prejudice to the opposing party*. *Johnson v. Crown Enters.*, 398 F.3d 339, 344 (5th Cir. 2005) ("To establish that a cause of action is barred by laches, the defendant must show (1) a delay in asserting the right or claim; (2) that the delay was not excusable; and (3) that there was undue prejudice to the defendant." (quotation omitted)). While we certainly have delay here, we are sorely lacking in evidence of prejudice to Shakertown, much less undue prejudice. *Cf. id.* ("All that [the appellees] argue is that [the appellant] waited too long [to file]. This argument does not satisfy their burden."). Crucially, Shakertown offered not a shred of proof that the value of the shingles, if promptly removed in 2000 immediately following our original affirmance, was

greater than the value of the shingles when removed in 2008;[4] that is, Shakertown offered no evidence that it actually suffered any harm or loss of value from the delay.[5]

The majority opinion suggests that Rule 60(b)(6) relief can be based upon the alleged inequity in Lindy's retaining of the "benefit" of the shingles for eight years after our original affirmance. Even there, however, no evidence was presented that such a "benefit" was the same or more than the amount of the judgment in question; nor was there any consideration of the costs expended by Lindy over the years to repair the shingles in order to gain any such "benefit." Thus, the district court, without any evidence or hearing, essentially applied an offset to the jury verdict ten years after it was announced. The amount of the effective offset, moreover, is in the *entire amount* of the verdict, a conclusion that is simply without any evidentiary support in the record.

The judgment in question is silent as to any time period for return. In discussing the judgment, the district court referenced Louisiana law of contracts not federal (or state) law of judgments. Construction of a federal judgment is governed by federal law of judgments, even if the underlying case involved state law as the rule of decision. *See, e.g.*, 11 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2853 (2d ed. 1995) ("The grounds and the procedure for setting aside a federal judgment are entirely a matter of federal law, on which state law may be disregarded."). No evidence was

---

[4] The majority suggests that Lindy derived some value—the amount of which we know not from this record—by continuing to have the shingles on its buildings. But value to Lindy is not harm or detriment to Shakertown. By way of analogy, I may derive some benefit from having paint—even defective paint—on my house, but it is of little use to anyone else if I scrape it off and send it to them. That is true whether I scrape it off immediately or many years later.

[5] In addition, the district court concluded that a "reasonable time" for return of the shingles would be one year, again without citing to or considering any evidence of what may be a "reasonable time" in the context of this particular product and this particular situation. *Lindy Invs.*, 631 F. Supp. 2d at 820 n.10. Given that there is a ten-year time period for enforcement of judgments, that seems like a more appropriate "reasonable time" here than that found by the district court.

presented that a time period could not have been included in the original judgment. Federal law requires judgments to be interpreted as written. *See, e.g.*, *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 148 (1988) (interpreting a district court's injunction order by considering "what the earlier federal order *actually* said" rather than "permit[ting] the District Court to render a *post hoc* judgment as to what the order was *intended* to say"). If a term is not contained in a judgment, it should not be lightly added some eight years later to the detriment of the party that won a hard-fought jury verdict. Rule 60(b)(6) is *not* the appropriate mechanism for correcting "a point obvious on the face of the judgment [that] was [neither] raised by motion to amend under Rule 59(e), nor raised on appeal," *Scola v. Boat Frances, R., Inc.*, 618 F.2d 147, 155 (1st Cir. 1980), even if one party apparently failed to appreciate the legal consequences of the judgment at the time, *PRC Harris, Inc. v. Boeing Co.*, 700 F.2d 894, 897–98 (2d Cir. 1983).

The district court's and the majority's reliance on Federal Rule of Civil Procedure 70 and *Flinn v. Rains (In re Rains)*, 338 B.R. 99, 103 (Bankr. E.D. Cal. 2006), to conclude that a reasonable time for "compliance" has passed and can be added to the judgment after the time has passed is misplaced. Rule 70 in general and *Rains* in particular concern the court's power to enforce judgments requiring a party to do something by instead requiring another to perform that act. Rule 70 provides: "If a judgment requires a party . . . to perform any other specific act and the party fails to comply within the time specified, the court may order the act to be done . . . by another person appointed by the court." FED. R. CIV. P. 70(a). In *Rains*, the bankruptcy court ordered Rains to take money out of his pension fund to pay Flinn "forthwith" after Rains failed to comply with a settlement agreement setting a date certain for such payment. 338 B.R. at 101. When he did not comply, the bankruptcy court concluded that a "reasonable time" had passed and appointed the trustee to take the money out of the fund

14

and pay Flinn. *Id.* at 103.

In sharp contrast to the situation contemplated by Rule 70 and the actual facts of *Rains*, the judgment by its terms did not require Lindy to do anything. The judgment did not, to use the language of Rule 70, "require[] [Lindy] . . . to perform any . . . specific act." Instead, the judgment imposed an obligation on Lindy to turn over the shingles in order to trigger its ability to collect redhibition damages from Shakertown. Even if, as the majority contends, Lindy was required to do a specific act, Rule 70's remedy, after a "reasonable time" has passed, is to order another to do that which Lindy failed to do. Here, after a "reasonable time" had passed, in the district court's view, it did not order someone else to take the shingles down and send them to Shakertown, which would have been the result under Rule 70 and *Rains*. Instead, it ordered that Lindy was too late and "out of luck."

The continuation of the status quo—Lindy's continued use of the shingles years after obtaining a favorable jury verdict—does not reach the level of an exceptional circumstance justifying the wholesale abandonment of the jury's verdict or the valid final judgment without any hope of recompense to Lindy for Shakertown's original sale of defective goods.[6] The right to trial by jury should not drown in the "grand reservoir" of Rule 60(b)(6).

*Rule 60(b)(5)*

Because I conclude that Rule 60(b)(6) does not justify the relief granted, I turn to the original ground for the district court's ruling not reached by the majority—Rule 60(b)(5). Rule 60(b)(5) states that, "[o]n motion and just terms, the court may relieve a party . . . from a final judgment [or] order . . . [when]

---

[6] The district court's conclusion that "[t]he plaintiffs' deliberate delay until 2008 could not have been anticipated at the time the amended judgment was issued" is contradicted by the numerous state statutes that permit a prevailing party to delay many years before collecting a money judgment. *See, e.g.*, LA. CIV. CODE ANN. art. 3501 (1994) (providing a period of ten years before a money judgment becomes unenforceable).

applying it prospectively is no longer equitable." FED. R. CIV. P. 60(b)(5). The application of Rule 60(b)(5) here turns in part on the meaning of "prospective." This Court has explained:

> Like the traditional equity rule on which it is based, rule 60(b)(5) applies only to judgments that have prospective effect "as contrasted with those that offer a present remedy for a past wrong." 11 [CHARLES ALAN] WRIGHT & [ARTHUR R.] MILLER, FEDERAL PRACTICE AND PROCEDURE § 2863[,] at 205 [(1973)] (footnote omitted). As Justice Cardozo pointed out in *Swift*, "The distinction is between restraints that give protection to rights fully accrued upon facts so nearly permanent as to be substantially impervious to change, and those that involve the supervision of changing conduct or conditions and are thus provisional and tentative."

*Cook v. Birmingham News*, 618 F.2d 1149, 1152 (5th Cir. 1980) (quoting *United States v. Swift & Co.*, 286 U.S. 106, 114 (1932)); *see also Kirksey v. City of Jackson*, 714 F.2d 42, 43 (5th Cir. 1983) (affirming denial of relief sought under Rule 60(b)(5) because the judgment had no prospective effect). Other circuits have observed that "[t]he mere possibility that a judgment has some future effect does not mean that it is 'prospective' because 'virtually every court order causes at least some reverberations into the future, and has . . . some prospective effect.'" *Kalamazoo River Study Group v. Rockwell Int'l Corp.*, 355 F.3d 574, 587 (6th Cir. 2004) (quoting *Twelve John Does v. District of Columbia*, 841 F.2d 1133, 1138 (D.C. Cir. 1988)) (second alteration in original).

Rule 60(b)(5), by its plain terms, does not permit the district court to vacate the jury's money award in this matter. That section allows a district court with a continuing supervisory role to modify or vacate an order when conditions have changed such that continued enforcement of the order is inequitable. However, Shakertown cites no precedential cases that permit the application of Rule 60(b)(5) to judgments other than consent decrees, declaratory judgments, and injunctions, all of which tend to be "prospective" in nature. *See id.* at 588 (interpreting *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 384

(1992)). The limited reach of Rule 60(b)(5) is consistent with the traditional reluctance of courts to disturb final judgments. *See Goldstein v. MCI WorldCom,* 340 F.3d 238, 258 (5th Cir. 2003) (citing *Pease v. Pakhoed Corp.*, 980 F.2d 995, 998 (5th Cir. 1993) and *Longden v. Sunderman*, 979 F.2d 1095, 1102 (5th Cir. 1992)). This disinclination would seem especially appropriate to observe where Rule 60(b)(5), as discussed above, would effectively overturn a jury verdict and hand a windfall to the losing party.[7] Although the judgment here conditions the payment of the jury's award upon proper rescission of the contract—that is, the return of the faulty product to Shakertown—the judgment itself has no prospective effect. Whether or not the conditions have changed such that enforcement of the judgment is inequitable, the district court's supervisory role concluded when it entered the judgment on September 25, 1998. Accordingly, I do not consider Rule 60(b)(5) to be the proper avenue for disturbing the jury's finding of liability and the district court's resulting final judgment.

Even if Rule 60(b)(5) applied here, as discussed above, Shakertown presented no evidence to support its conclusion that the passage of time materially altered the benefits it was to receive from the rescission. Rule 60(b)(5) relief is "only cautiously to be granted . . . . [C]aution, substantial change, unforeseenness, oppressive hardship, and a clear showing are the requirements." *Valentine Sugars, Inc. v. Sudan*, 34 F.3d 320, 322 (5th Cir. 1994) (internal citations and quotation marks omitted). No evidence was presented of the difference in value between the siding at the time of this court's original affirmance and the time of Lindy's rejected effort to return. Instead, the evidence from the trial suggested that, once removed, the shingles had no value. Thus, I conclude that Shakertown failed to meet its burden to prove "changed

---

[7] As discussed in the context of Rule 60(b)(6), in this way, this case is quite different from many of the cases cited by the parties in which the effect of granting the Rule 60(b) motion is to allow a trial on the merits. Here, the effect is to deprive the winning party of the results of a trial on the merits without further recourse.

circumstances" that led to some unforeseen "oppressive hardship" against it.

*Conclusion*

Lindy's delay in fulfilling the condition precedent to obtain its money judgment does not present an extreme situation sufficient to justify the exceptional remedy imposed by the district court—the annulment of the jury's verdict by setting aside the judgment entered on that verdict. I would reverse the district court's Rule 60(b) order.